## LUMBER CO. v. RAILROAD.

(Filed April 17, 1906).

*Carriers —Freight —Illegal Discrimination —Pleadings— Evidence —Exceptions —Overcharges —Money Had and Received—Protest—Interest.*

1. The statute (Rev., sec. 3749), which is declaratory of the common law, secures to every person the right to participate in the use of the facilities furnished, or which it is its duty to furnish, by a common carrier upon terms of equality, in regard to price, and otherwise, and free from unlawful discrimination.

2. A common carrier is guilty of unlawful discrimination by the principles of the common law, and the terms of the statute, when it charges one person for service rendered a larger sum than is charged another person for like service under substantially similar conditions.

3. A carrier cannot rightfully charge one shipper $2.50 per thousand feet for hauling his logs if it, at the same time, for the same service under substantially similar circumstances, carried logs for other persons at $2.10 per thousand feet in consideration of the shipment of the manufactured products over its railroad.

4. Where a higher charge was paid than that charged other shippers, the payment is not to be considered voluntary and the excess may be recovered back upon account for money had and received, and it is not necessary that at the time of payment there should have been any protest.

5. In an action by a shipper to recover from the carrier money wrongfully received by reason of an illegal freight charge, the amount of overcharge draws interest.

6. An exception to the refusal of the court to dismiss an action to recover sums paid on account of discriminating overcharges, because the complaint did not set forth the exact dates of the shipments of logs by plaintiff over defendant's road and did not state the same dates and times that defendant had charged and received a lower rate from other persons, is without merit, where it is evident that defendant was not misled and it did not demand a more specific statement nor ask for a bill of particulars.

7. An exception to the admission of testimony of a witness for that his statements were general and did not fix dates of shipments, etc., is without merit, where the purpose of the testimony was to lay the foundation upon which plaintiff was seeking to show the character of defendant's business, the number of its lines or branch roads, their terminal points, the number, etc., of mills on such lines, its own dealings with defendant.

8. An exception for that the witness was permitted to testify as to logs shipped from a point in South Carolina to Wilmington, N. C., which was interstate and not within the control of the State courts, is without merit.

9. Where the question at issue was whether defendant, while charging plaintiff $2.50 per thousand for hauling logs 39 miles to Wilmington, was charging other persons $2.10 for the same service under substantially similar circumstances, it was competent to show the rates charged other persons for shipment of logs in car lots over branches of defendant's road not coming into Wilmington.

10. In the enforcement of the civil right of the citizen, the court must construe the law so that the right is secured and the remedy for its infringement given.

11. An exception to an instruction "that the word contemporaneous in the statute did not mean the exact day, hour, or necessarily month, but that it meant a period of time through which the shipment of goods or freight were made by plaintiff at one rate and by other shippers at another rate," is not error where the court in the same connection told the jury that the burden was on the plaintiff to satisfy them by the greater weight of the evidence, that during the period of time named in the complaint, the discriminating rate was charged.

ACTION by The Hilton Lumber Co. against Atlantic Coast Line Railroad Co., heard by *Judge W. B. Councill* and a jury, at the December Term, 1905, of the Superior Court of NEW HANOVER.

Plaintiff sued for the recovery of $3,865.26, alleged to have been unlawfully demanded and paid defendant company on account of discriminating overcharges for shipments of logs over defendant's road from the 15th day of November, 1898, to the 30th day of April, 1901. Plaintiff alleged that between said dates the defendant company, a common carrier, unlawfully charged and demanded of plaintiff an unreasonable and discriminating rate of $2.50 per 1,000 feet for hauling its logs from Musteen's Crossing to the City of Wilmington, a distance of 39 miles, whereas during the said time, defendant charged other persons and corporations for shipment of logs for a like distance to said city, only $2.10 per thousand. That, after protest against such discrimination, plaintiff applied to the Corporation Commission of the State, whereupon said commission ordered defendant to reduce its rate to $2.10 per thousand feet. That between said dates plaintiff shipped logs from said crossing to Wilmington, aggregating 9,663,160 feet; for which it paid at the rate of $2.50 per thousand feet, the sum of $24,157.90. That the amount which should have been paid at $2.10 per thousand feet would have been $20,292.64, the difference between said amounts being $3,865.26. The plaintiff demanded payment of said amount, etc. Defendant admitted the plaintiff had paid the sum named for hauling logs between said points, but denied that same was either unreasonable or discriminating. Defendant denied that the rate of $2.10 per thousand feet was a reasonable or proper rate for carrying plaintiff's logs and says there was a substantial difference, both in conditions and circumstances, between logs shipped over its road at $2.10 per thousand feet and those shipped by plaintiff at $2.50 per thousand feet. That the $2.10 rate applied only to mills to which logs were shipped and from which it was after-

wards reshipped in the form of lumber or its manufactured products. The other material allegations were denied.

After the pleadings were read, the defendant moved *ore tenus* to dismiss the action upon the ground that it did not state a cause of action upon which plaintiff was entitled to recover, in that it did not set forth the exact dates of the shipments of the logs, which it claimed to have shipped over defendant's road, and did not state at the same dates and times the defendant was charging, collecting and receiving from other persons a lower rate of freight for the same kind of shipments. Motion overruled and defendant excepted.

Defendant admitted its liability to plaintiff for the sum of $91.98, being the excess of $2.10 per thousand feet collected from plaintiff on shipment of logs from March 20, 1901, to April 30, 1901, the commission having fixed the rate at $2.10 on March 20, 1901, and defendant not having observed or adopted it in shipment of plaintiff's logs until April 30, 1901. At the conclusion of the plaintiff's evidence defendant demurred and renewed its motion to nonsuit the plaintiff. Motion denied and defendant excepted.

The court upon the trial submitted the following issues to the jury:

1. Did the defendant unjustly and illegally discriminate against the plaintiff in the matter of freight rates or transportation of logs, as alleged?

2. Did defendant unlawfully collect of plaintiff freight from November 15, 1898, to April 30, 1901?

3. If so, what sum, if any, is plaintiff entitled to recover?

At the conclusion of the entire evidence defendant renewed its motion for judgment as of nonsuit, which was denied and defendant excepted. Verdict was rendered upon the issues and there was judgment for plaintiff. Defendant excepted and appealed.

*Rountree & Carr* for the plaintiff.
*Junius Davis* for the defendant.

CONNOR, J., after stating the facts: In the complaint some reference is made to an agreement entered into by the Wilmington & Weldon Railroad Co., to whose rights and contracts the defendant succeeded, and the predecessor of plaintiff in regard to hauling logs. The cause was heard and determined, as appears from the record, upon the sole question whether, during the periods named in the complaint, defendant company demanded and received payment from plaintiff a rate of freight in excess of that charged other persons or corporations for the same service under substantially similar conditions. The learned counsel in his brief says: "The action is not in tort, but *ex contractu*. Plaintiff charges that the defendant required it to pay $2.50 per thousand feet for hauling logs in car load lots a distance of forty miles, when defendant had a regular, established and published rate for other portions of its line  *  *  *  of $2.10 for the same service and the same rates applied at Wilmington for all who would agree to give the defendant the output of their mills." The defendant denied the allegations upon which plaintiff's alleged cause of action is founded. It says further, that assuming the law to be as contended by the plaintiff, it has not shown by any competent testimony that, at the date of shipments made over its road, defendant was charging and receiving from other persons a less rate of freight than that charged plaintiff for a like service in the transportation of like traffic contemporaneous in point of time and under substantially similar circumstances. The record contains exceptions to the ruling of His Honor presenting every phase of these controverted questions. It will be observed that the foundation of plaintiff's claim is not, that the rate charged plaintiff was, except in so far as it was related to the lower rate charged, unreasonable. The gravamen of the complaint is that the rate was discriminating and by reason thereof, unlawful. Plaintiff claims that it has a right to demand of defendant, (1) that it haul the logs at a reasonable rate; (2)

LUMBER CO. *v.* RAILROAD.

that it haul them at the same rate charged other persons for
hauling logs over the same distance at the same time and
under substantially similar circumstances.   This right, it
charges, defendant has infringed and thereby demanded and
received for hauling its logs, between the dates named, the
amount sued for, in excess of the amount which it was en-
titled to receive.   That in good conscience, defendant should
repay this amount and it sues as for money had and received
to its use.   The agreement referred to in the complaint is
eliminated by plaintiff's averment that it is suing to enforce
its right at common law, of which section 3749 of the Re-
visal is but declaratory, to have equality in rates, etc.   It
will be observed, as said by *Clark, C. J.,* in *Lumber Co. v.
Railroad Co.,* 136 N. C., 479 (487), that this statute is sub-
stantially like that portion of the English "Traffic Act,"
known as the "Equality Clause" and the "Interstate Com-
merce Act."   These and similar statutes are said by many
of the courts to be but declaratory of the common law, which
required all public carriers to serve all persons at reasonable
rates and upon equal terms under similar circumstances.
However that may be, the fundamental purpose underlying
all of this legislation, both in England and this country, is,
as said by *Mr. Justice White,* in *Railroad Co. v. Interstate
Commission,* Supreme Court Reports, Vol. 26, p. 272, that
"Whilst seeking to prevent unjust and unreasonable rates to
secure equality of rates as to all and destroy favoritism,
these last being accomplished by requiring the publication
of tariffs and by prohibiting secret departures from such
tariffs, and forbidding rebates, preferences and all other
forms of unjust discrimination, to this extent and for these
purposes, the statute is remedial and is, therefore, entitled to
receive that interpretation which reasonably accomplishes
the great public purpose which it was enacted to subserve.
* * * What was that purpose?   It was to compel the
carrier as a public agent to give equal treatment to all."

Referring to provisions in charters of railway companies having for their purpose the guarantee that all persons should have equality of right in the use of facilities afforded by common carriers, *Tindall, C. J.,* in *Parker v. Great Western R. R. Co.,* 49 E. C. L., 252 (p. 287), says: "Acts passed under such circumstances should be construed strictly against the parties obtaining them, but liberally in favor of the public." *Blackburn, J.,* in *Great Western R. Co.. v. Sutton,* L. J., 1869, N. S., 38, 177, after reviewing the several acts of parliament on the subject, says: "I think the construction of the proviso for equality is equally clear and is that the company may, subject to the limitations in their special acts, charge what they think fit, but not more to one person than they do, during the same time, charge to others under the same circumstances." The evil intended to be remedied is the prevention of unjust discrimination, or to put the proposition affirmatively, to secure to every person constituting a part of the public, an equal and impartial participation in the use of the facilities which the carrier is capable of affording and which it is its duty to afford. It is an elementary rule that statutes shall be so construed as to repress the evil and advance the remedy. We held in this case—*Railroad Discrimination case,* 136 N. C., 479—that upon the facts set out in the complaint and substantially the same testimony, that the discrimination was unlawful. In other words, that defendant could not rightfully charge the plaintiff $2.50 per thousand feet for hauling its logs, if it, at the same time, for the same service under substantially similar circumstances, carried logs for other persons at $2.10 per thousand feet in consideration of the shipment of the manufactured products over its road. This proposition, the learned counsel does not ask us to reconsider. He contends that the plaintiff has neither alleged nor proven such a state of facts. We have discussed the law only in so far as the general principles governing the right of plaintiff and duty

of defendant enable us to approach the decision of the several exceptions of defendant to specific rulings of His Honor. The first exception is to the refusal to dismiss the action because the complaint did not set forth the exact dates of the shipments of logs by plaintiff over defendant's road and did not state the same dates and times that defendant had charged and received a lower rate for shipment of logs from other persons. The argument upon this exception made by defendant's counsel in his brief takes a rather wider range than the causes of demurrer assigned in the record. He says that it is not charged in the complaint that any service of a like kind was rendered contemporaneously by defendant for any other person at a lower rate than was charged plaintiff. The complaint appears to have been drawn with a "double aspect;" that is, eliminating the reference to the agreement, it charges that the rate charged plaintiff was unreasonable. It also avers that a reasonable and proper rate "having reference to the charges to other shippers and under like conditions and circumstances would not have been more than $2.10 per thousand feet. That the charge to the plaintiff of $2.50 per thousand feet when others are charged only the rate of $2.10 per thousand for the shipment of logs for a like distance to the city of Wilmington * * * is discriminating and unreasonable." While the charge in respect to the facts relied upon is not so explicit as it may have been, it is evident that defendant was not misled. In paragraph 6 of the answer the defendant "denies that the rate of $2.10 per thousand feet would have been or was a reasonable and proper rate of freight under the circumstances, and alleges that there is a substantial difference both in conditions and circumstances between the timber shipped by the plaintiff over the defendant's road at the rate of freight of which the plaintiff complains in its complaint and the rate of $2.10 per thousand feet, and the defendant avers that the conditions and circumstances under which the rate

LUMBER CO. *v.* RAILROAD.

of $2.10 per thousand feet was charged by it were substantially different, for this rate applied only to mills to which the timber was shipped, and from which it was afterwards re-shipped over defendant's lines in the form of lumber or its manufactured products." If desired it may have demanded a more specific statement.

In regard to the exception to the complaint for indefiniteness as to dates, etc., defendant might, if it so desired, have asked for a bill of particulars. Revisal, sec. 494. The ruling of His Honor was correct.

We proceed to consider the other exceptions in the order presented in the brief of appellant, omitting any reference to such exceptions as are not argued, except the forty-fourth. Counsel stated that, with that exception, they were abandoned. The fourth to seventh inclusive, are pointed to the admission of testimony of Mr. Parsley for that his statements were general and did not fix dates of shipment, etc. The plaintiff was, by this testimony, laying the foundation upon which he was seeking to show the character of its business, the number of lines or branch roads of defendant, their terminal points, the number, etc., of mills on such lines, its own dealings with defendant. For those purposes we see no valid objection to the testimony. The sixteenth exception is for that the witness was permitted to testify as to logs shipped from a point in South Carolina to Wilmington, N. C., which was interstate and not within the control of the State courts. We do not perceive how the testimony involved interstate commerce. It was relevant to the issue, and tended to show the manner of dealing by defendant company with persons shipping logs over its lines coming into Wilmington.

Exceptions 21 to 30 present the question whether for the purpose of showing the discrimination alleged, it was competent to show the rates charged other persons for shipment of logs in carload lots over branches of defendant's road not

coming into Wilmington; for instance Mr. Hines, who oper-
ated a mill at Kinston, to which logs were hauled from other
points on defendant's road, was permitted to testify in
regard to the rates paid for shipping carload lots. Mr.
O'Berry, at Goldsboro, was also permitted to testify to the
same effect. The question at issue was whether defendant,
while charging plaintiff $2.50 per thousand for hauling logs
39 miles from Musteen's Crossing to Wilmington, was
charging other persons $2.10 for the same service under sub-
stantially similar circumstances. To give any beneficial or
remedial effect to the law, either common law or statute,
it must be given a reasonable construction. Certainly to
show that in a few cases and within a short period lower
rates were given other persons would not establish unlawful
discrimination. It is therefore essential to plaintiff's right
to recover for it to show that a regular systematic discrimi-
nating rate was given. Nor do we conceive that it is neces-
sary for plaintiff to show that the lower rate was confined to
persons shipping logs into Wilmington. If it is made to
appear that during the period named the defendant was
giving to mill owners at Kinston, Goldsboro or other points
on its line, a lower rate than that given to persons living in
Wilmington, the conditions being substantially similar, such
discrimination would be unlawful. To so construe the law
as to permit a railroad to charge a person shipping logs in
carload lots to Wilmington, a distance of 39 miles, $2.50 per
thousand and to charge a person shipping in the same way
over the same distance to other points $2.10 in the absence
of any circumstances or conditions justifying the discrimi-
nation, would practically nullify the underlying principle
upon which it is based. The real and pivotal question is
whether the differences in charges are contemporaneous in
point of time and under substantially the same circum-
stances. The purpose of the testimony was to establish this
proposition. The principle involved is announced by *Black-*

burn, J., in *Great Western Railway. v. Sutton, supra:* "When it is sought to show that the charge is extortionate as being contrary to the statutory obligations to charge equally, it is immaterial whether the charge is reasonable or not, it is enough to show that the company carried for some other persons or class of persons at a lower charge during the period throughout which the party complaining was charged more under like circumstances. One single act of charging a person less on one particular occasion would not, I think, make the higher charge to all others extortionate during all that day, week, or month, whatever the period might be. I think it would be necessary to show that there was a practice of carrying for some person or class of persons at the lower rate. But a single instance would be evidence to prove this practice. * * * It would be of the very essence of the case to prove that the goods were of the same description and came under the same circumstances." We think that the testimony was relevant and that it was sufficiently definite to go to the jury. The witnesses were asked in regard to rates charged them for longer and shorter distances than that over which plaintiff's logs were shipped. If this was error, we do not perceive how defendant was prejudiced by it.

Exceptions 31 to 34 are to allowing Mr. Parsley to testify that he had seen logs moving on the defendant's branch lines, the objection being that he could not name the dates accurately. The testimony was, in the light of His Honor's charge confining the inquiry of the jury to the dates fixed in the issue, entirely harmless. Exceptions 36 and 37 are disposed of by what is said in regard to exception 16. This disposes of the exception directed to the admission of evidence. At the close of plaintiff's evidence defendant demurred and demanded judgment of nonsuit, which was denied. Defendant waived its exception to this ruling by introducing evidence. Assuming that plaintiff had intro-

duced testimony which, for the purpose of disposing of the motion for judgment of nonsuit was fit to go to the jury, we are brought to a consideration of defendant's motion to nonsuit at the close of the entire evidence. This motion involves the assumption that plaintiff's evidence was insufficient, and that nothing has been shown by defendant to aid the defective condition of plaintiff's case. Assuming that plaintiff has introduced evidence fit to be submitted to the jury to show that between the dates named it paid defendant $2.50 per thousand feet for hauling logs from Musteen's Crossing to Wilmington in carload lots and that during the same period defendant gave to other persons a $2.10 rate for hauling logs in carload lots the same distance, and that such lower charge was general, that is, a practice was made of doing so, does defendant's evidence aid the plaintiff in showing either that the conditions were substantially similar, or if not, whether the conditions justified the difference in the rates? Mr. Emerson, who was defendant's traffic manager, testified that he made the rates on logs hauled over defendant's road. He was shown and identified a number of printed tariffs showing rates at a number of points on the road and branches. He testified that there was at no time a rate of $2.10 per thousand feet for logs shipped to Wilmington, a distance of 39 or 40 miles. The only portion of his testimony which could in any aspect aid the plaintiff is the statement in reply to a question by plaintiff's counsel. "You asked, as I understand it, why it was that we applied a higher rate on logs to Wilmington, N. C., than we applied to other towns over our lines; I will answer that by saying that the revenue received on the product of the logs from the points in Eastern Carolina named in the testimony and for which tariffs have been filed, enabled us to haul the logs to the mill at a lower figure than we felt that we could afford to handle the logs to a mill without getting any of the product. We were prepared to make the same arrangement effective—

I will change it. We offered that if the product of the logs were shipped out we were prepared to make the same rates effective to the Wilmington mill on the logs on which we received the product as were applied to any other mill on the line of our road." Mr. Emerson, in reply to another question, testified: "The Hilton Lumber Company paid no more for logs they desired to move than would be paid by the Cape Fear or Angola Lumber Company.  *  *  *  We have in effect between certain points on the Wilmington & Weldon Railroad, where logs are moving to mills and where we receive for shipment the lumber cut from said logs, rates as per the following table: '40 miles and over 30, $2.10.' You will note that these rates are somewhat lower than the rates we are charging on logs moving to Wilmington and other points where we do not receive a second movement in the way of lumber cut from the logs moved." The date fixed by witness is November 12, 1900. He does not state when this rate went into effect—"That they did not apply over the entire Atlantic Coast Line." We omit any reference to the charge of $2.10, which witness said was made by mistake. Assuming that there is sufficient evidence in regard to shipments of plaintiff and of witnesses testifying in regard to shipments from other points to go to the jury, we have, with Mr. Emerson's testimony, this case, presented upon defendant's demurrer. Defendant, operating several lines or branches of railroads in Eastern North Carolina, upon which are located several saw mills, deriving their supply of logs over such lines as are convenient to them, maintains a tariff by which it charges in Wilmington $2.50 per thousand feet for carload lots a distance of 39 miles, and mills at other points $2.10 for the same service, the difference being that it handles the manufactured products of the logs thus shipped at points other than Wilmington and was willing to make the same rates effective to the Wilmington mill on the logs of which it handled the product. Thus stated, assuming the

other conditions to be substantially similar, is the discrimination unlawful? The question is answered by this court in the defendant's appeal at the Fall Term, 1904, *supra.* *Clark, C. J.,* says: "The proposition is that a common carrier has a right to charge one person a lower rate of freight than another for shipping the same quantity the same distance, under the same conditions, provided the shipper give the company a consideration (shipping the manufactured lumber subsequently over its line), which its managers think will make good to it the abatement of rate given to such parties. But if this is equality as to the treasury of the company, it is none the less a discrimination against the plaintiff." The authorities are reviewed in the opinion and we have no disposition to disturb the reasoning or conclusion reached on that appeal. Since the rendition of that decision the Supreme Court of the United State has, in an able opinion, discussed the principles involved in this case and applied them to a correction of the evil of unjust discrimination which goes to the root of the matter; saying that the statute was remedial and to be given a construction which reasonably accomplishes the great public purpose which it was enacted to subserve. "Nor, in view of the positive command of the second section of the act that no departure from the published rate shall be made 'directly or indirectly,' how can it in reason be held that a carrier may take itself out from the statute in every case by simply electing to be a dealer and transport a commodity in that character. * * * The all-embracing prohibition against either directly or indirectly charging less than the published rate shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about." In an exceedingly strong opinion by *Mr. Justice Doe,* in *McDuffee v. Railroad,* 52 N. H., 430 (13 Am. Rep., 72), it is said: "A common carrier is a public carrier. He engages in a public employment and takes upon himself a

public duty and exercises a sort of public office. \* \* \*
His duty being public, the correlative right is public. The
public right is a common right and a common right signifies
a reasonably equal right." After an interesting discussion
and review of English cases, the learned justice says: "In
charters of common carriers what is called the equality clause
was inserted, requiring the carriers to furnish transportation
on equal terms. The fashion of legislation once set, was
studiously followed with a degree of reverence for precedent
that does not prevail in this country. General statutes were
passed enacting the common law doctrine of reasonable equal-
ity and new methods of enforcing it were introduced. And
the practice of the English courts on charters and general acts
of this kind, has been so long continued that the fact seems
now to be overlooked that the general principle of equality
is the principle of the common law, \* \* \* It seems to
have been a result of the anxiety of parliament that instead
of merely providing such new remedies and modes of judicial
procedure as they deemed necessary for the enforcement of
the common law, they repeatedly re-enacted the common law
until it came to be supposed that in such an important matter
as the public service of transportation by common carriers
the public was indebted for the doctrine of equal right to the
modern vigilance of parliament instead of the system of legal
reason which had been the birthright of Englishmen for
many years. A mistake of this kind is of some magnitude.
It unjustly weakens the confidence of the community in the
wisdom and justice of the ancient system and impairs its
vigor." After pointing out the tendency sometimes seen to
give a narrow construction to such statutes upon the theory
that they are changes in the common law, he says: "But the
common law of equal right and reasonableness is the ground
on which we stand." The action in *Parsons v. Ch. & N. W.
Ry.*, 167 U. S., 447, was brought for a violation of the Inter-
state Commerce Act and the decision is based upon the lan-

guage of the statute. It is true that *Mr. Justice Brewer* says: "So, but for the provisions of the Interstate Commerce Act, the plaintiff could not recover on account of his shipments to Chicago, if only a reasonable rate was charged therefor, no matter though it appeared through any mistake or partiality on the part of the railway officials shippers in Nebraska had been given a less rate." The action was brought to recover a penalty and of course it was necessary to show that the provisions of the statute had been violated. In commenting upon this interesting subject, we note the following language in an editorial notice in the Harvard L. R., volume XIX, No. 6, p. 453, of the recent decision of the Supreme Court of the United States in *N. Y., etc., R. R. v. Interstate Com., supra:* "It has been remarked many times that the common law may be relied upon to meet, by the continual development of its fundamental principles, the complex conditions created by the constant evolution in the industrial organization. One of the most striking of modern instances of this capacity of growth in the common law is the astonishing progress in the working out of the detail of the exceptional law governing the conduct of public callings. So dependent are all commercial activities upon adequate service by the great companies which conduct these public employments, that the general situation demands the stern code that all who apply shall be served with adequate facilities for reasonable compensation, and without discrimination. Enforcement of all branches of this law is necessary at all times; but the commercial community is most interested today in the prevention of personal discrimination. It is established now, past all qualification, that it is the duty of the common carrier to serve all alike who may ask the same service, so that all shippers from a given point may compete with each other in distant markets upon equal terms. For it is now recognized that the slightest differences in the rate may result in the long run · in building up one concern and in ruining its

rival. Judge Noyes, in his work on "American Railroad Rates," page 103, after stating the general doctrine in a note, says: "While the rule of the common law is undoubtedly correctly stated in the text, it has not been followed by several American courts of high standing. In fact, at the present time, it is probable that the weight of American authority is in favor of equal charges to all persons for similar services—even in the absence of statutory provision."

We think that the strict construction heretofore given the act by the Federal courts may be modified to conform to and promote the purpose of the legislation—to enforce by appropriate remedies the great common law doctrine of equality of service by public agencies of all kinds. The decision referred to points strongly in that direction. However the courts construe statutes making penal or criminal a violation of the equality of right, when we come to deal with the question, in the enforcement of the civil right of the citizen, we must construe the law so that the right is secured and the remedy for its infringement given. This is the keynote of the decisions, both in England and this country. In *Directors, etc., v. Evershed,* 3 App. Cas., 1029, *Lord Hatherly* says: "According to the strict meaning of the Acts of Parliament, as interpreted by the decisions from the very moment that the company charges A a given sum when B, another person, comes to the company to have the same service rendered under the same circumstances, he cannot be charged one farthing more than has been charged A; he can only be charged precisely what the act authorizes the company to charge, namely, that which has been charged others, and the moment the directors take on themselves to charge less to another person, they must charge less to him too." *Hays v. Penn. R. Rd.,* 12 Fed Rep., 309; *L. E. & St. L. R. R. v. Wilson,* 18 L. R. A., 105, note. Defendant says there was no evidence tending to show that at the time it was shipping logs and paying $2.50 rate any other person was shipping

under similar circumstances at the $2.10 rate. Mr. Parsley swore to the payment of the $2.50 rate by defendant. It appears that mills were being operated, receiving logs over defendant's line at different points during the time named. Mr. Emerson says that defendant was operating these lines, had a tariff for logs giving the basis of it, he says that he was traffic manager. Mr. Hines and others say that they were operating mills, shipping logs over defendant's line, etc. It is true that no one says that on any given day logs were shipped and the $2.10 rate paid, but in view of the well known fact that men do not keep saw mills standing idle or railroads keep cars idle when it can be avoided, nor ship freight without payment therefor, the jury may well have found that they were shipping logs over defendant's lines at the rates fixed by the tariffs. Mr. Hines says: "We own some timber which came over the Coast Line · * * * sawed probably two or three million feet." Other witnesses testified to the same effect. It would be impossible for any one to recover for discrimination in freights, unless testimony of this character could be received and submitted to the jury. Whether the testimony was true and what reasonable inferences were to be drawn from it was for the jury. *Interstate Comm. v. Ry. Co.,* 168 U. S., 144. We do not think that His Honor was in error in denying motion for nonsuit. His Honor charged the jury: "That the word contemporaneous in the statute did not mean the exact day, hour, or necessarily month, but that it meant a period of time through which the shipment of goods or freights were made by plaintiff at one rate and by other shippers at another rate." To this defendant excepted. His Honor in the same connection told the jury that the burden was on the plaintiff to satisfy them by the greater weight of the evidence, that during the period of time named in the complaint the discriminating rate was charged. We find no error in this instruction. His Honor, after defining the duty of the defendant to give equal rates,

said: "If, therefore, you find from the evidence in this case that the defendant company extended to shippers of logs who did agree with defendant that after the shipment of logs over its line of road, that the logs when manufactured into lumber at the saw mill of the shipper would be re-shipped over defendant's line of road, even though this was open to all saw mill owners or shippers doing business at any point along the line of the road, and you find that other saw mill owners or shippers who were shipping logs and manufactured lumber over defendant road under like conditions, but who did not accept or agree to the terms so held out or extended were not given this lower rate, then the court charges you that those accepting the lower rate, if you find from the evidence that any such did, would fix the rate at which other shippers who did not accept the rate would in law be required to pay, and any sum demanded or collected of any shipper not conforming to such agreement in excess of the lower rate would be in violation of the law. If, therefore, you find from the evidence in this case that a schedule of shipping rates during the period of time from the 15th of November, 1898, to March 20, 1901, was maintained and promulgated by the defendant company, by the terms of which they extended to shippers a rate of $2.10 per thousand in carload lots of lumber shipped over its line within the distance of from 30 to 40 miles, such rate extending only to those who might ship the manufactured product again over defendant's line, and you further find from the evidence that on other portions of the defendant's road that it charged other shippers—or charged the plaintiff—$2.50 a thousand feet, the shipments made for a like distance and under substantially the same circumstances and conditions and contemporaneously, then the plaintiff would be entitled to have the first issue answered 'yes.' ". Defendant excepted (43 exception). Whatever cause for criticism to be found in this language is removed by reading it in connection with that immediately following: "It will

not be alone sufficient for the plaintiff to satisfy you from the evidence in the case that two rates of freight were maintained by the defendant company, or rather, that a rate was extended to one class of shippers who might return the manufactured product over their road, and another rate to those who did not elect to accept this rate and do so, but the plaintiff must go further and satisfy you from the evidence that at the time such rates were maintained (if you find from the evidence they were so maintained) that it was during this period shipping lumber over defendant's road a like distance, under substantially the same conditions, and paying a higher rate of freight to the defendant company than the first mentioned class." Thus read, we see no error in the instruction given. We find it difficult to discuss the exceptions separately, because in some instances they are interjected between sentences which are connected and can only be understood when so read. Many of the exceptions are pointed to the statement of the contention of the parties. The charge is very full, covering several pages in the record. We have given to it a careful examination and are of opinion that it accords with the decision of this court. In dealing with the testimony in regard to the charge made the Angola Company alleged by defendant to have been the result of a mistake, His Honor instructed the jury that if they so found they should dismiss it from further consideration. He further instructed them that having admitted the fact, it was incumbent upon defendant to show that the lower rate, which unexplained, was discriminating, was charged by mistake. There really seems to be no evidence to the contrary, and it would seem that the particular item had but little effect upon the case. No special instructions were asked by either side. A careful examination of the charge shows that His Honor correctly instructed the jury that if they found the facts in regard to the several rates as alleged by the plaintiff they must further find before answering the issue in the affirma-

tive that the shipments for the lower rate were for a like distance and under substantially the same circumstances, and this we understand to be the test which distinguishes a lawful from an unlawful discrimination. It is not denied that all the shipments of the logs were in carload lots, nor is it claimed that the cost of handling the freight coming into Wilmington was greater than that going to other points. The real controversy made upon the first appeal and again presented upon this record is whether, assuming the facts to be as plaintiff claims, the defendant could give a lower rate to such of its customers as shipped the manufactured product of the logs over its line and, as we have seen, that question has been decided adversely to the defendant's contention. The only case to which our attention has been directed which would tend to sustain the contention is the *L. & N. & R. Co. v. Comn.*, 18 Am. & Eng. R. Cas., decided by the Supreme Court of Kentucky. We have examined that case with care and think that the dissenting opinion of *Paynter, J.*, in which two of the other judges concurred and which fully sustains the view taken by this court, and we think supported by authority and reason, is the sound view of the question. The defendant does not controvert the plaintiff's right to recover for money had and received, provided the facts are as alleged. In *Western Railroad v. Sutton, supra,* the action was for money had and received for a discriminating freight rate charged and paid. It was held in that case that where a higher charge was paid than that charged other shippers, the payment was not to be considered voluntary and the excess might be recovered back upon account for money had and received. The authorities are uniform upon this question. It is not necessary that at the time of payment there should have been any protest. As said by the Supreme Court of Alabama in *Mobile M. R. Co. v. Steiner,* 61 Ala., 559, in an action like this: "The nature of the business considered, the shipper does not stand on equal terms with the carrier in contracting

for charges for transportation, and if the shipper pays the rates established in violation of the law to the carrier rather than forego his services, such payment is not voluntary in the legal sense and the shipper may maintain his action for money had and received to recover back the illegal charge." There seems to be no conflict of authorities upon this question. His Honor gave judgment for the amount sued for and interest, to which defendant excepted. We think His Honor was correct. The theory upon which the plaintiff recovers is that the defendant has received the money wrongfully and the law implies a promise to repay it. The action was originally equitable in its character and founded upon the theory that in good conscience the defendant should repay the money wrongfully received and from this duty the law implied a promise so to do. We see no reason why the amount should not draw interest. Revisal, sec. 1954; *Barlow v. Norfleet,* 72 N. C., 535; *Farmer v. Willard,* 75 N. C., 401. The cases cited by defendant were actions in tort, wherein the jury may or may not allow interest, as they see proper. In this lies the distinction.

Upon a careful review of the entire record, we find no reversible error. The judgment must be

Affirmed.

BROWN, J., did not sit on the hearing of this case.