PAUL CHATHAM ET AL. v. MECKLENBURG REALTY COMPANY.

(Filed 5 December, 1917.)

1. **Corporations — Contracts — Subscriptions — Corporate Acts — Board of Directors — Evidence — Ratification — Officers — Principal and Agent— Scope of Authority.**

Where a realty company proposes to lay off its land into lots for sale, and its president and two of its directors, in writing, subscribe to a street railroad company to be built through the lands, the nearest one being 1½ miles distant, and upon the operation of the railway the lots are sold off at a great profit upon the original investment, amounting to much more than the sum subscribed, and upon objection to the service the railway company improved its operations accordingly, and the officers of this company saw the work in progress without at any time objecting: *Held,* sufficient evidence to be submitted to the jury on the question whether the president and directors acted within the scope of their authority in making the subscription or of the subsequent ratification of their acts by the corporation. *Duke v. Markham,* 105 N. C., 131, cited and distinguished.

2. **Corporations—Subscriptions—Contracts.**

Where the name of a corporation is stricken out of a subscription to an enterprise with the consent of the parties, and the subscription is thus delivered and accepted, it is binding between the acceptor and the other subscribers, and is a valid obligation between them.

3. **Judgments—Contracts—Interest—Statutes.**

Where the controversy is made to depend upon whether a written agreement of a certain date to subscribe to plaintiff's enterprise in a sum certain was binding upon the defendant corporation, the affirmative answer of the jury to the issue carries with it interest on the subscription from the date it was due, as a matter of law, and judgment should be rendered accordingly, and not from the date of its rendition, as in tort. Revisal, sec. 1954.

APPEAL by defendant from *Cline, J.,* at the February Term, 1917, of MECKLENBURG.

In May, 1910, the defendant owned 156 8-10 acres of land about 3½ miles east of Charlotte, which it had bought for $16,131, and proposed to

. dispose of the same for suburban home lots. W. S. Lee was president of defendant Realty Company and A. J. Draper and W. H. Hood were directors, and these, with other associates, organized the Mecklenburg Country Club adjoining the defendant's land.

In June, 1910, Paul Chatham had an application before the aldermen of Charlotte for a street railroad franchise, the nearest street car line at that time being 1½ miles from this property. Defendant was desirous that Chatham should construct the line he proposed through defendant's property, and the president of the defendant proposed that it and the Country Club would subscribe $10,000 to aid in the construction of the line to be run through a part of the defendant's property. This paper was dictated by Lee to a stenographer and was signed by him in the name of the company and delivered to Chatham to get Draper and Wood, the two directors above mentioned, to sign, which was done by them with Lee's concurrence after striking out the Mecklenburg Country Club as one of the parties.

In December, 1910, Stephens, selling agent of the defendant, had a plat made of the property, which has been sold off for $87,185, being an advance of $71,053 profit. Work was begun on the street railway in the spring of 1911 and completed in November of that year. The defendant sold practically all this land between 20 March and 30 May, 1911.

It was in evidence that the plaintiffs' and defendant's officers were in consultation many times during the construction of the line, and that no objection was made by defendant to the location of the line after the completion of the first line, when the plaintiff presented a bill to the defendant for its subscription of $10,000; that objection was made that the storage battery cars with which the line was equipped were unsatisfactory, and that thereupon the plaintiff proposed that he would take the line up and build a first-class trolley system down Mecklenburg Avenue to the Country Club as soon as he could get a contract with the Southern Public Utilities Company to furnish the power to operate it, and it was replied by the defendant's officers that in such case the defendant would have to pay the $10,000. There was also evidence that the plaintiffs began the construction of a trolley line which was laid out by Laxton, one of defendant's directors, and that while this line was under construction defendant's officers frequently saw the work in progress and none of them protested that the line was unsatisfactory, and, further, that this second line was located and completed with the knowledge and consent and approval of defendant's officers at a cost of $35,000, and has since been in continuous operation at a cost of about $30 per day, and that defendant's president stated that when he signed the paper he was satisfied that if the road was built in a condition satisfactory to

defendant's board of directors it would be worth $10,000 to the defendant to have the road run through his property. In May, 1913, when the plaintiffs again demanded payment of its subscription, the defendant's officers replied, in effect, that they had then disposed of practically all their property and had no interest in the car line, and again refused payment. Upon the issues submitted, the jury found a verdict for plaintiff in the sum of $10,000, but the court signed judgment, with interest on $10,000 only from first day of the trial term. Both parties appealed.

Cansler & Cansler and H. L. Taylor for plaintiff.
Osborne, Cocks & Robinson for defendant.

DEFENDANT'S APPEAL.

CLARK, C. J. The court properly instructed the jury that if the words "Mecklenburg Country Club" were stricken out by one of the signers of the paper with the knowledge and consent of the other parties before the delivery to the plaintiff that the paper delivered, signed by the president and two directors of the defendant company, was the sole and exclusive obligation of the defendant; that it was a complete contract in itself, and not a preliminary agreement, and was a valid obligation between the parties. There was evidence that upon the failure of the storage-battery cars, the defendant extended and afforded an opportunity to the plaintiffs to perform the contract without an abandonment of the subscription, and that the construction of the second line was under and in reliance upon the subscription; that the terms of the contract were complied with and was ratified by the defendant, and that the defendant never dissented from or protested against the construction of the second line.

The defendant earnestly insists that it is not bound by the contract signed by its president and two directors, and insists upon the decision in Duke v. Markham, 105 N. C., 131, which held that a mortgage was not valid, as to third parties, which was not authorized by the majority of the stockholders in meeting assembled, the assent of each stockholder having been given separately and at different times to a person who went around to them privately, holding that this was not the act of the corporation, and that though money was raised upon such mortgage, this would not validate it as to other creditors, since it was invalid when registered.

That has no application in this case. This contract, as submitted to the jury, is between the original parties thereto and was executed by the president and two directors. There was evidence that they were acting in behalf of the corporation as their general agents, with the knowledge

43—174

of the company, and that subsequently when there was objection made there were changes made in the work to the knowledge of the defendant company; that its officers saw the work in progress and under the amended agreement and made no objection. There was ample evidence, if believed by the jury, that the president and the two directors, in making the contract, were acting within the scope of their authority, and that the subsequent change in the contract was ratified by the defendant, who had been benefited many times the value of the subscription by reason of the work done by virtue of this contract, and the jury, under very full and correct instructions by the court, have found their verdict in favor of the plaintiffs.

The exceptions are numerous and were ably and fully presented in this Court. We have carefully considered them and do not find error therein.

### PLAINTIFFS' APPEAL.

On the coming in of the verdict, the plaintiffs tendered the court judgment for $10,000, with interest from 19 May, 1913, the date of the contract. The court refused to sign the judgment tendered by plaintiffs and signed judgment for $10,000, with interest from the first day of the trial term, 5 February, 1917.

The plaintiffs excepted and appealed.

Revisal, 1954, is as follows: "All sums of money due by contract of any kind whatsoever, excepting money due on penal bonds, shall bear interest; and when a jury shall render a verdict therefor, they shall distinguish the principal from the sum allowed as interest, and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it be paid and satisfied."

In *Barlow v. Norfleet,* 72 N. C., 535, it is said: "The judge left it to the jury to give the plaintiff interest or not, as they should think proper. We think he should have instructed them that if they found that defendant owed the principal sum demanded, the plaintiff was entitled to interest from the time it became due."

The jury having found for the plaintiff in the principal sum, the court should have entered judgment bearing interest thereon from the date of the contract. *Jolly v. Bryan,* 86 N. C., 458 (463), which says: "As this (interest on verdict), however, can be corrected by a simple calculation, it is not necessary to disturb the verdict, but only to modify the judgment in this particular." This rule is approved in *Lumber Co. v. R. R.,* 141 N. C., 171.

In an action on contract, when the jury finds the principal sum due thereon, which in this case was $10,000 (or nothing), said sum bears interest as a matter of law, and the court should give interest from the

date of the contract, or from the time at which it was due under the contract. *Bond v. Cotton Mills,* 166 N. C., 20. But when the action is in tort, the jury can allow interest or not, as it sees fit, and, therefore, when the jury does not assess interest the verdict and judgment bear interest only from the first day of the term at which the judgment is rendered. *Harper v. R. R.,* 161 N. C., 451; *Hoke v. Whisnant,* at this term.

The judgment will be modified so as to bear interest from 19 May, 1913.

In plaintiffs' appeal, Modified.
In defendant's appeal, No error.