SALISBURY AND SPENCER RAILWAY COMPANY AND NORTH CARO- LINA PUBLIC SERVICE COMPANY v. SOUTHERN POWER COMPANY.

(Filed 24 November, 1920.)

1. **Evidence—Motions—Inspection Before Trial—Writings—Corporations —Public-service Corporations—Statutes—Constitutional Law.**

Where the issue in an action involves the question as to whether a public-service corporation, furnishing electric power to other such com- panies for distribution and resale, discriminates in its charges against the plaintiff, a motion in this cause, under the provisions of Pell's Revisal, 1656, with affidavits, etc., asking that the defendant furnish plaintiff copies of certain specified contracts which the defendant has made with other consumers under the same or substantially similar conditions, is the proper remedy, and the allegations are not objectionable upon the ground that the matters alleged are insufficient to warrant the order, for that the contracts are immaterial to the proper determination of the issues in- volved.

2. **Same—Court's Discretion—Appeal and Error.**

A motion under Pell's Revisal, 1656, that defendant, a public-service corporation, furnish plaintiff copies of certain contracts in order to show an alleged discrimination against the plaintiff, in rates charged other consumers or distributors of electricity, etc., is addressed to the sound legal discretion of the trial judge, and in the absence of evidence of his abuse of such powers, not reviewable on appeal.

3. **Corporations—Public-service Corporations—Discrimination—Courts— Inherent Powers—Corporation Commission—Electricity.**

The courts have inherent power to enforce, by *mandamus*, a public- service corporation to perform its public duty to furnish electricity among its customers without discrimination as to rates or charges, independent of the powers conferred on the corporation commissioners, whose au- thority is to fix indiscriminative rates; and the objection that this com- mission has not established the rates on the subject is without force when the public-service corporation has contracts with other like customers, for the lowest rate of charges therein will automatically take effect as the proper charges to be made.

4. **Corporation Commission—Courts—Discrimination—Public-service Cor- porations—Rates and Charges.**

The Corporation Commission has no power or authority to fix rates of charges for a public-service corporation discriminative among its custom- ers for the same or substantially similar service, and in the event of such

discrimination, relief will be afforded by the court in the exercise of their inherent jurisdictional powers over the subject.

**5. Same—Public Service—Evidence—Statutes—Motions.**

> Where public-service corporations have dedicated property to the public for the resale of its electric current to the public-service corporations, a motion (Pell's Revisal, 1656) for it to furnish copies of contracts it is alleged to have made with others for a discriminating rate of charges against the plaintiff for the same or similar services, is material to the issue, not only upon the question of unlawful discrimination, but also upon the question as to whether, in fact, the defendant had so dedicated its property to the public use.

APPEAL by defendant from an order of *Ray, J.,* made at September Term, 1920, of GUILFORD.

*A. L. Brooks, Lynn & Lynn, and Roberson & Dalton for plaintiffs.*
*Cansler & Cansler, Broadhurst & Cox, W. P. Bynum, and W. S. O'B. Robinson, Jr., for defendant.*

BROWN, J. This is an appeal from an order made in the cause reported 179 N. C., 19, rehearing p. 331. It was decided in that case that the defendant is a public-service corporation, enjoying the right of eminent domain in North Carolina, and that it may be compelled to furnish the electric current to the plaintiff and other customers without unjust discrimination. It has been further held that a *mandamus* lies to compel the defendant to continue furnishing current to the plaintiffs at the same rate that the defendant furnishes it to other customers who are similarly situated with the plaintiffs. The motion of the plaintiffs to require the defendant to furnish them copies of certain specified contracts which it is claimed the defendant has made with other customers under substantially similar conditions, and is based upon section 1656 of Pell's Revisal, and is founded upon an affidavit, the verified complaint, and the two previous opinions rendered by this Court in this case. Plaintiffs aver that these contracts, if produced, will show an unjust discrimination as to rates, and will enable plaintiffs to establish their allegation that the defendant is unlawfully discriminating against them.

That the plaintiffs are proceeding properly by petition in the cause to obtain the order is well settled. *Justice v. Bank,* 83 N. C., 11; in *Evans v. R. R.,* 167 N. C., 416, the Court, construing this statute, said: "The power of the Court to order the production of a paper under this statute is indisputable, but it must be a paper which contains evidence pertinent to the issue. . . . If it is a paper-writing which is pertinent to the issue, then the matter of ordering its production is confided by the statute to the sound discretion of the judge of the Superior Court, and his ruling will not be reviewed here."

The defendant insists that the judge below erred in requiring copies of these contracts to be furnished plaintiffs, upon the ground, (1) that the affidavit and motion does not set forth sufficient facts to warrant the order; and, (2) that even if the affidavit be sufficient, the contracts are not material to the proper determination of the issues involved.

The learned counsel for defendant contends that these contracts relate to the question of rates which it is charging other consumers; that the courts have no authority to fix rates; that the question of discrimination in rates is one solely for the Corporation Commission; and that the courts cannot afford relief in this case. To these contentions plaintiffs reply that they are not seeking to have the court fix rates, but are willing to accept the rates which the defendant has already fixed by its own written contracts with other consumers of current similarly situated.

The plaintiffs further contend that the defendant has filed a statement with the Corporation Commission denying that it has any right or authority to fix the rates between it and consumers of current, such as the plaintiffs', and that the Corporation Commission has failed to prescribe any rates, leaving the defendant free to charge every consumer whatever it pleases for current, and that these contracts now in existence, when produced, will demonstrate that the defendant is unjustly discriminating against the plaintiffs.

The complaint in this case avers that the defendant is operating unrestrained by governmental control, and denies the right of both the Corporation Commission and the court to prevent its making and enforcing its own contracts for current, and that it is charging first one customer and then another different rates for the same or substantially similar service. No public-service corporation engaged in public employment can successfully sustain such a position. The court possesses ample power to prevent discrimination in rates by all public-service companies, and it cannot be doubted that *mandamus* will lie to compel the defendant to furnish its service to the consuming public without discrimination. This power is inherent in the courts, and exists independent of the Corporation Commission, or even statutory law. It is derived from the common law.

This conclusion is forcibly stated by *Mr. Justice Brewer* in his opinion in *Missouri P. R. Co. v. Larabee Flour Mills Co.*, 53 U. S. Law Ed., 359. That was likewise a case of *mandamus* instituted in the State courts. It is there said: "While no one can be compelled to engage in the business of a common carrier, yet, when he does so, certain duties are imposed which can be enforced by *mandamus* or other suitable remedy. The Missouri Pacific engaged in the business of transferring cars from the Sante Fe track to industries located at Stafford, and continued to do so for all parties except the mill company. So long as it engaged in

such transfer it was bound to treat all industries at Stafford alike, and could not refuse to do for one that which it was doing for others. *No legislative enactment, no special mandate from any commission or other administrative board, was necessary, for the duty arose from the fact that it was a common carrier. This lies at the foundation of the law of common carriers.* Whenever one engages in that business, the obligation of equal service to all arises; and that obligation, irrespective of legislative action or special mandate, can be enforced by the courts. Neither is there any significance in the absence of a special contract between the Missouri Pacific and the mill company."

*Justice Connor,* speaking for the Court in *Garrison v. R. R.,* 150 N. C., 585, quotes with approval the foregoing opinion, and adds: "In no possible form can this fundamental truth be evaded. It is a 'thing fixed' in the common law, enforced by both common law and statutory remedies, its violation denounced as criminal, and subjected to severe punishment. We cannot permit any departure from it, however persuasive the reasons assigned may be for doing so."

The fact that the Corporation Commission has the power and authority to fix the rates at which the defendant shall sell its current and electric energy to all consumers connecting with its lines in no wise precludes the courts from preventing the defendant from making unlawful discriminations in rates charged for the same, or substantially similar service. The Corporation Commission itself has no power to authorize such a discrimination, and if it appears to the court that an unlawful discrimination exists, it can be corrected by *mandamus* without regard to whether it results from a contract imposed by the defendant directly or otherwise. While the court will not fix rates, it will review the Corporation Commission itself if it should unjustly discriminate.

The contention of the defendant that such matters are for the Corporation Commission was expressly denied by this Court in *Walls v. Strickland,* 174 N. C., 299. That was likewise an action for *mandamus,* and the sole question presented to the Court was: "The defendants excepted and appealed, upon the ground that telephone companies being subject to the control and regulation of the Corporation Commission, the courts have no jurisdiction of the action."

*Mr. Justice Allen,* delivering the opinion of the Court, says: "The error in the position of the defendants is in failing to distinguish between the regulation and control of telephone companies, which, as to individuals and corporations, are committed by statute to the Corporation Commission (Rev., 1096; ch. 966, Laws 1907), whether exclusively so or not we need not say, and the refusal to perform a duty to the plaintiff, arising upon facts that are established."

It thus appears that this Court has declined to abdicate its jurisdiction and authority in such cases to deal with "the refusal to perform a duty to the plaintiff arising upon facts that are established."

The plaintiffs, both in their verified complaint and in their affidavit in support of this motion, aver that these contracts will establish the fact that the defendant is now selling current to other consumers under the same, or substantially similar conditions, at a less price than it is charging the plaintiffs. If this be so, the evidence is very material, and the plaintiffs are entitled to have copies of same. A number of the contracts appear to be between defendant and other utility companies and municipalities purchasing current for resale, as are the plaintiffs. Aside from the issue as to discrimination in rates, these contracts are material as tending to support plaintiffs' allegation that the defendant has dedicated its property to the use of other public-service corporations, which are reselling current to the consuming public. To illustrate: The parties have put directly in issue a contract between the defendant and the Southern Utility Company, the plaintiffs alleging that not only does this contract show an unlawful discrimination in rates, but that it also establishes that the defendant has dedicated its property to the service of that utility, which in turn is serving the cities of Charlotte, Winston-Salem, Reidsville, and other towns and cities in South Carolina. If such a contract as plaintiffs allege exists, there can be no question of its materiality upon the issues arising in this case.

The law governing the powers and duties of the court with relation to granting relief against unjust discrimination in rates was very fully discussed and determined by this Court in *Lumber Co. v. R. R.,* 141 N. C., 175. In that case the plaintiff sought to recover the difference between $2.50 per thousand charged for hauling logs and $2.10 charged other shippers for the same service, under substantially similar conditions. The Court there adopted the lowest rate as the governing rate, and plaintiff was allowed to recover the difference.

Plaintiffs in the present case aver that a similar practice is engaged in by the defendant, and it seeks by a *mandamus* to prevent the discrimination by requiring the defendant to charge it the same rate which it has already established for other consumers taking current under substantially similar circumstances. Such practices are unlawful, and the remedy is at the election of the party injured. In *R. R. case, supra,* the shipper elected to wait and sue for the difference paid, while here the plaintiff has elected to seek a *mandamus* to prevent the unlawful discrimination, and thus avoid a multiplicity of suits. A learned English judge has recently very aptly said that the modern business world has a right to expect the courts "to be service stations and not repair shops."

*Justice Connor,* in delivering the opinion of the Court in the *R. R. case, supra,* quotes with approval an editorial note in the Harvard Law Review, Vol. XIX, No. 6, page 453, as follows: "It has been remarked many times that the common law may be relied upon to meet, by the continual development of its fundamental principles, the complex conditions created by the constant evolution in the industrial organization. One of the most striking of modern instances of this capacity of growth in the common law is the astonishing progress in the working out of the detail of the exceptional law governing the conduct of public callings. So dependent are all commercial activities upon adequate service by the great companies which conduct these public employments, that the general situation demands the stern code that all who apply shall be served with adequate facilities for reasonable compensation, and without discrimination. Enforcement of all branches of this law is necessary at all times; but the commercial community is most interested today in the prevention of personal discrimination. It is established now, past all qualification, that it is the duty of the common carrier to serve all alike who may ask the same service, so that all shippers from a given point may compete with each other in distant markets upon equal terms. For it is now recognized that the slightest differences in the rate may result in the long run in building up one concern and in ruining its rival."

This Court, in the same case, in discussing the procedure by which the Court would determine what was an unjust discrimination, and what rate the complaining party should pay, quotes with approval the language of *Lord Hatherly* in *Directors, etc., v. Evershed,* 3 App. Cas., 1029, as follows: "According to the strict meaning of the acts of Parliament as interpreted by the decisions, from the very moment that the company charges A. a given sum when B., another person, comes to the company to have the same service rendered under the same circumstances, he cannot be charged one farthing more than has been charged A.; he can only be charged precisely what the act authorizes the company to charge, namely, that which has been charged others, *and the moment the directors take on themselves to charge less to another person, they must charge less to him, too.*"

This well recognized principle of law has already been correctly stated by this Court in this case, by the *Chief Justice,* 179 N. C., 34, where it is said: "It will not be difficult for the Court, upon the hearing, to determine the lowest rate charged by the defendant for current and power furnished cotton mills, factories, municipalities, or other public-service companies, under the same or substantially similar conditions. The lowest rate thus established will automatically become the proper

rate to be charged the plaintiffs for such service; otherwise the defendant will still be unlawfully discriminating against the plaintiffs."

By the application of this doctrine, the Court does not fix defendant's rates, but simply adopts the lowest rates which the defendant power company itself has fixed for the same, or substantially similar service. Plaintiffs are not asking a lower or different rate from that now given other consumers under similar conditions. This does not interfere with defendant's applying to the Corporation Commission at any time to fix the rates it shall be permitted to charge these plaintiffs and other consumers of current receiving such service, but neither the commission nor the defendant can fix rates that unjustly favor one consumer over another. The courts are always open to prevent this kind of discrimination, and manifestly, the only way to prevent discrimination is to require the defendant to furnish current to these plaintiffs at exactly the same price it has fixed by contract to other consumers under substantially the same circumstances.

As to the number of contracts to be furnished, the plaintiff should not demand more than is reasonably sufficient to establish their allegations. It is not for us to say what copies shall be furnished, for that is a matter which, under the statute as well as under the general principles of law, is left to the sound legal discretion of the presiding judge. *Bank v. Newton,* 165 N. C., 363.

We fail to find any abuse of such discretion in the exercise of this power by the learned judge of the Superior Court, as the contracts called for are all apparently pertinent to the issues raised by the pleadings.

The order of the Superior Court is

Affirmed.