JOHN H. GALES AND WIFE, JULIETTE S. GALES v. J. O. SMITH.

(Filed 10 December, 1958.)

1. **Executors and Administrators § 24a— Evidence held sufficient to make out cause of action to recover on quantum meruit for personal services.**

The evidence in this case *is held* sufficient to show that plaintiffs, husband and wife, and the father of the feme plaintiff entered into an agreement under which the feme plaintiff was to perform housework and look after her mother, and the male plaintiff was to operate the father's farm in consideration of the father's promise to deed plaintiffs the farm so that they would become the owners at the time of the father's death or would devise same to plaintiffs, and that plaintiffs fully performed their part of the contract, but that the father breached the contract by ejecting plaintiffs without cause and by devising the property to others, and therefore nonsuit was error in plaintiffs' action to recover the reasonable value of their services.

2. **Trial § 22—**

Discrepancies and contradictions, even in plaintiff's evidence, do not justify nonsuit.

3. **Frauds, Statute of, § 6b:    Wills § 4—**

An oral agreement to devise realty is within the statute of frauds and unenforceable.

4. **Executors and Administrators § 24c—**

Any presumption arising from the family relationship that personal services rendered were gratuitous is rebuttable by proof that the services were performed in consideration of the agreement to pay therefor by conveyance or devise.

5. **Executors and Administrators § 24a—**

In an action to recover on *quantum meruit* for personal services rendered in reliance on a contract to convey or devise, allegations and evidence as to the alleged contract are relevant, not as a basis for recovery on the contract, but to rebut any presumption that the services were gratuitous.

6. **Trial § 23a—**

Where plaintiffs' allegations and evidence are sufficient to make out a cause of action entitling them to nominal damages at least on the basis of *quantum meruit*, involuntary nonsuit may not be properly entered, notwithstanding the absence of evidence as to the reasonable value of the services.

PARKER, J., not sitting.

APPEAL by plaintiffs from *McKinnon, J.,* April Term, 1958, of BRUNSWICK.

The appeal is from a judgment of involuntary nonsuit entered at the close of plaintiffs' evidence.

Plaintiffs, husband and wife, instituted this action on October 30, 1956, to recover from J. O. Smith, father of the feme plaintiff, the sum of $15,000.00, alleged to be the reasonable value ($250.00 per month for 60 months) of services performed by them in behalf of the feme plaintiff's parents.

J. O. Smith owned a 90-acre farm in Brunswick County, of which 50 acres were cleared. Plaintiffs lived in J. O. Smith's home, located on said farm, from October, 1951, until October, 1956, when, pursuant to legal proceedings instituted by J. O. Smith, they were ejected from the premises.

Plaintiffs alleged: "3. That during the month of October, 1951, the defendant entered into an agreement with the plaintiffs whereby it was agreed that the plaintiffs would move into the home of the said defendant and live with the defendant and his wife, Olivia Smith, the plaintiff Juliette S. Gales to do all of the housework which consisted of cooking, washing, ironing, taking care of the garden and yard, cleaning and taking care of the house and rendering personal service to the defendant J. O. Smith and his wife, Olivia Smith; and the plaintiff John H. Gales was to work on the farm hereinafter referred to, planting, cultivating and gathering the crops, and it was agreed that the defendant J. O. Smith, in payment for said services, would, prior to his death, convey to the plaintiffs his farm and home or would devise same to them so that they would become the owners of same at the time of the death of the said J. O. Smith. It was further understood and agreed that the terms of said contract were such that the plaintiffs would live in the home of the defendant during the lifetime of the defendant and the defendant's wife and would perform the services hereinbefore set forth and that the defendant would convey or devise said farm and home to the plaintiffs in payment for said services."

Plaintiffs alleged further that on August 20, 1956, "the defendant told the plaintiffs that he had made a will and had devised all of his property, including said farm and home, to all of his children to be equally divided, each to share and share alike, and that he was not going to pay the plaintiffs anything for the five years' service which they had rendered the defendant and his wife in accordance with the agreement between them."

Plaintiffs alleged further that they fully performed their obligations under said contract, but defendant breached said contract (1) by forcing plaintiffs to leave said home and premises without just cause, and (2) by failing to convey or devise said property to plaintiffs.

Answering, J. O. Smith, defendant, after denying the material allegations of the complaint, alleged, in substance, the following: In Oc-

tober, 1951, plaintiff John H. Gales rented defendant's farm on a share-crop basis. While plaintiffs were free to live elsewhere, if they lived in the home with defendant and his wife it was agreed that they would help with the household work. In August, 1956, defendant did tell plaintiff John H. Gales that he was not indebted to said plaintiff but that in fact said plaintiff was indebted to him. Plaintiff John H. Gales became so abusive to defendant, particularly in the summer of 1956, that defendant became fearful of his health and safety; and, since plaintiffs refused to leave his home upon his request, he caused their removal by ejectment proceedings. What he had done for plaintiffs was of substantially more value than what plaintiffs had done for him and his wife.

J. O. Smith, defendant, died in February, 1957; and David C. Smith, Executor of J. O. Smith, substituted as party defendant, adopted the answer J. O. Smith had filed.

Pertinent portions of plaintiffs' evidence will be set forth in the opinion.

Plaintiffs excepted and appealed, assigning as error (1) the exclusion of certain testimony offered in behalf of plaintiffs, and (2) the judgment of involuntary nonsuit.

*E. J. Prevatte for plaintiffs, appellants.*
*Herring & Walton for defendant, appellee.*

BOBBITT, J.   Evidence offered by plaintiffs tends to show, *inter alia,* that from October, 1951, until October, 1956, plaintiff John H. Gales successfully cultivated and substantially improved the J. O. Smith farm; that, by his efforts, a tobacco barn and a packhouse were built thereon and new and improved farm machinery of substantial value was acquired; and that the feme plaintiff did the housework and cared for her invalid mother until her death on January 13, 1956. In short, plaintiffs' evidence tends to show that they fully performed all obligations imposed on them by their alleged contract with J. O. Smith.

Did J. O. Smith, in October, 1951, enter into an agreement with plaintiffs, *as alleged in the complaint?* This issue was raised by the pleadings. The determinative question now presented is whether plaintiffs' evidence was sufficient to require submission of this issue to the jury.

The testimony of plaintiffs tends to show the following:

Plaintiffs were married on September 2, 1950. The feme plaintiff, youngest child of J. O. Smith, was then living with her parents in the J. O. Smith home. After their marriage, John H. Gales, who had been living with his brother in Shallotte, completed a crop, worked for a month in a fish factory near Southport, and thereafter worked on a dredge, first in Wilmington, then in Georgetown, South Carolina, then

in Brunswick, Georgia. (For his work on the dredge, he "cleared on the average over $60.00 per week.") Meanwhile, except for occasional week-end trips to Wilmington and Georgetown, the feme plaintiff continued to stay in the home of her parents.

In September, 1951, John H. Gales obtained leave to come home. He stayed until their first child was born. After completion of the job at Brunswick, the dredge was to be transferred to Florida for work that would take more than a year. The feme plaintiff wanted to go to Florida with her husband. It was decided that when he got to Florida he would get an apartment and send for her.

When J. O. Smith "found out" that plaintiffs were going to leave, he "talked it over" with John H. Gales. After their conversation, John H. Gales went back to Brunswick; but upon completion of the Brunswick job he notified the Captain that he was going home to farm. He then went to the home of J. O. Smith, where his wife and child were staying, and began farming with J. O. Smith in October, 1951.

Danny Gales, a brother of John H. Gales, testified that, on his way home from Southport, "while John was still on the dredge," he stopped at the home of J. O. Smith. He testified that, in the course of their conversation, Mr. Smith stated: "Danny, I am too old to be working like I am working. Juliette, here, she's here waiting on her mother and tending to her mother. John is supposed to be here. He ought to quit that dredge and come home. At my death I am going to give Juliette the place. John ought to be here working for his interest; it will be something for him in the future; he ought to be here working instead of me working like I am working." Danny Gales testified further that he told Mr. Smith that he agreed with him and that John would be a big help to him and it would mean something to John and Juliette in the future. Whereupon, so Danny Gales testified, Mr. Smith stated: "Well, at my death I'm going to give them the place, if he will come home; he ought to come on home and go to work and help me and do that much for his interest." Danny Gales testified that he visited Mr. Smith again, about three weeks after the conversation referred to, at which time he found that John had quit the dredge and had come in and gone to work at Mr. Smith's.

Danny Gales also testified: "Several months after the death of Mrs. Orin (Mrs. J. O.) Smith, I met Mr. Smith on the highway close to where he lived and I stopped and shook hands with him. I had not seen him in a couple of months and I asked him how they were all getting along and he did not seem to say much, until finally he said 'Danny, I am sorry not to give Juliette and John the place.' I asked him why he had decided not to give them the place, and I said that Juliette was mighty good to her mother and that she and John had worked there with him. Mr. Smith then said: 'Well, I am afraid that

if 1 go ahead and give the place to John, that he will mortgage the place and destroy it, do away with the place; I want to keep the place in the Smith family; I don't want it to get out of the Smith family.' I then told him that he ought to have thought about that before he made John and Juliette that offer and they could have got out somewhere else and would not have been hooked up there. Mr. Smith dropped his head and did not answer me."

The foregoing evidence, when considered in the light most favorable to plaintiffs, was sufficient to require submission of the case to the jury.

It is noted that discrepancies and contradictions in the evidence, even though such occur in the evidence offered in behalf of plaintiff, are to be resolved by the jury, not by the court. *White v. Lacey*, 245 N.C. 364, 369, 96 S.E. 2d 1.

An oral agreement to devise realty is within the statute of frauds and therefore unenforceable. *Humphrey v. Faison*, 247 N.C. 127, 134, 100 S.E. 2d 524, and cases cited.

Assuming, without deciding, that the family relationships, nothing else appearing, raise the presumption that the services performed by plaintiffs were gratuitous, *Francis v. Francis*, 223 N.C. 401, 26 S.E. 2d 907, and cases cited, such presumption is rebutted if and when plaintiffs establish that the services were performed in consideration of defendant's agreement to pay therefor by conveyance or devise of his farm, effective as of the date of his death.

The applicable rule is stated by *Stacy, C. J.*, in *Stewart v. Wyrick*, 228 N.C. 429, 45 S.E. 2d 764, as follows: "When services are performed by one person for another under an agreement or mutual understanding (fairly to be inferred from their conduct, declarations and attendant circumstances) that compensation therefor is to be provided in the will of the person receiving the benefit of such services, and the latter dies intestate or fails to make such provision, a cause of action accrues in favor of the person rendering the services."

Plaintiffs do not seek to enforce the alleged contract. They seek to recover on *quantum meruit*. Allegations and evidence as to the alleged contract are relevant, not as the basis of recovery, but to rebut any presumption that the services were gratuitous, *Wells v. Foreman*, 236 N.C. 351, 72 S.E. 2d 765, and as facts and circumstances permitting the inference that payment was intended on the one hand and expected on the other, *Nesbitt v. Donoho*, 198 N.C. 147, 150 S.E. 875.

It is noted that, while plaintiffs offered evidence as to the nature and extent of their services, no evidence was offered as to the reasonable value of such services. However, implied assumpsit (contract) is the basis for recovery on *quantum meruit;* and, if such contract was breached by J. O. Smith, plaintiffs were entitled at least to nominal damages. *Sineath v. Katzis*, 218 N.C. 740, 756, 12 S.E. 2d 671; *Bowen*

*v. Bank*, 209 N.C. 140, 144, 183 S.E. 266. This is sufficient to eliminate said deficiency in plaintiffs' evidence as a ground for judgment of involuntary nonsuit.

It appears from the testimony of the feme plaintiff that she had three sisters and four brothers, all living except one brother. Although it appears that plaintiffs introduced, without objection, the last will and testament of John Orin Smith, dated August 20, 1956, and probated March 1, 1957, the provisions thereof are not set forth in the record. However, since the arguments in both briefs proceed on the assumption that J. O. Smith did not convey or devise the said realty to plaintiffs, we are disposed, for present purposes, to act on the same assumption.

In holding that the court was in error in granting defendant's motion for nonsuit, we have considered only the *admitted* evidence. It is not necessary to decision, and we deem it inadvisable on the present record, to discuss plaintiffs' assignment of error directed to the exclusion by the court of a portion of the testimony of Mrs. Cora Smith wherein she undertook to testify to declarations made to her by Carmen Smith, a son of J. O. Smith.

The judgment of involuntary nonsuit is reversed.

Reversed.

PARKER, J., not sitting.