MOORE *v.* INSURANCE CO.

JOHN L. MOORE, JR. v. AMERICAN NATIONAL FIRE INSURANCE COMPANY OF NEW YORK

(Filed 25 February, 1959.)

**1. Insurance § 92—**

Testimony to the effect that in raising insured's house in constructing a basement, the house was underpinned so that it was even more solidly on its foundations than before, and that winds of a hurricane shook the house and then lifted it up and caused it to crash to the ground, *is held* sufficient to sustain the jury's verdict that the damage was the direct and proximate result of windstorm and that insured had not increased the hazard, and to justify recovery on the windstorm policy sued on.

**2. Trial § 22c—**

Discrepancies and contradictions in plaintiff's evidence are for the jury and not the court, and do not justify nonsuit.

APPEAL by defendant from *Armstrong, J.,* at March 17, 1958 Term of FORSYTH— docketed and argued as No. 383 at the Fall Term 1958 of this Court.

Civil action to recover on a standard fire insurance policy with extended coverage against windstorm.

On December 15, 1955, defendant American National Fire Insurance Company of New York issued to plaintiff a standard fire insurance policy insuring in an amount not exceeding $6,000.00 a one-story frame, metal roof dwelling owned by plaintiff and situated on the east side of Jackson Avenue in Winston-Salem, N. C.

The insurance policy, in pertinent part, contains these provisions:

"The coverage of this policy is extended to include direct loss by windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke.

"Provisions applicable only to windstorm and hail: This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather, or (b) snow storm, tidal wave, overflow or ice, whether driven by wind or not.

"Conditions suspending or restricting insurance * * * Unless otherwise provided in writing hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

In the case on appeal the parties have "stipulated that the policy of fire insurance issued in this case was in the form prescribed by the statutes of North Carolina and that the rider or endorsement thereon extending the coverage thereon included windstorm damage

as set out in the case on appeal," and was in effect on September 26, 1956.

Plaintiff alleges that at approximately 10 o'clock on the morning of September 26, 1956, as a result of a windstorm, the dwelling house covered by this policy of insurance was lifted from its foundation and blown 3 or 4 feet in a southerly direction causing it to crash to the ground, damaging and destroying the house, for which he asks to recover of defendant $6,000.00.

Defendant, answering, denies these allegations of the complaint, and avers that any damage to plaintiff's dwelling house was due solely and proximately to excessive rainfall, causing water to pool under the rear of the house, and the pillars upon which the house was resting to give way and the house to fall; and that it is not liable for any damage to plaintiff's house caused directly or indirectly by high water or overflow, whether driven by wind or not.

And defendant further avers, as an affirmative defense to plaintiff's cause of action, that plaintiff, after the policy came in force, raised the house off and above its original foundation and moved it two or three feet and increased the risk that the house would fall, and pleaded G.S. 58-176, and provisions of the policy, against liability.

And upon the trial in Superior Court plaintiff, as witness in his own behalf, testified in part as follows: " * * * Before September 26, 1956, I had been having some work done on my house. I was in the process of putting in a basement, so that I might install central heating. We had just about completed excavating the dirt from beneath the house. I had employed a contractor, Daniel Mack, to jack up my house, in order to take the dirt out from underneath the house * * * On September 26th there were three stacks of pins supporting the house on each side * * * through the middle was a cement slab or a footing * * * at the bottom of the basement * * * Before the storm there were four what I call posts resting on the cement slab that ran east and west * * * They were square posts, made of oak timber, and they were standing on that cement slab * * * straight up to the house * * * The house was resting on the timbers and on the six pins and on the posts in the middle. I was going to bring the wall up later * * * I was just waiting there to complete it when the 26th came * * * My house seemed to be more steadier, seem to be more solid after those timbers were run under there than it did before. It had no sign of shaking or vibration when we moved around in the house."

Daniel Mack testified in part: " * * * Some few weeks before September 26, 1956, I did some work at the John L. Moore, Jr., house.

I raised his house from 2½ to 3 foot and shoved it over about * * * 2 or 3 foot * * * south about 3 foot. I raised his house to be under-pinned, and in raising his house I put timber under the house, suffi-cient timber to hold the house to be underpinned for a full sized basement. My timber was from 36 to 40 foot long * * * The house measured about 25 foot across and about 30 foot back * * * and my beam was sitting 6 foot up on the bank * * * ."

And John L. Moore, Sr., 81 years old, father of plaintiff, testified in part: " * * * On the morning of September 26th, 1956, I was in the house * * * The wind was blowing * * * and it blowed so I went to the door, and the wind was so strong I couldn't open the door, and then, immediately after that, the storm shook the house once or twice pretty heavy, and I got scared in there, wasn't nobody there but me. Then another storm come, after I went to the door, and just lifted the house up and 'sot' it over on the basement. It was about 10 o'clock when the house went over."

Plaintiff offered evidence in detail as to the weather conditions, on the fringe of Hurricane Flossie, the winds and rain in the vicinity of plaintiff's house at the time when the house is alleged to have been blown over.

Defendant rested its case without offering evidence, reserving ex-ception to denial of its motion for judgment as of nonsuit aptly made.

The case was submitted to the jury on these issues, which were answered by the jury as indicated:

"1. Was the dwelling house of the plaintiff, John L. Moore, Jr. damaged as the direct and proximate result of windstorm, as alleged in the complaint? Answer: Yes.

"2. Did the plaintiff, after the last renewal period, to-wit: De-cember 2, 1955, increase the hazard, as alleged in the Answer? Answer: No.

"3. What amount of damage, if any, is the plaintiff entitled to recover of the defendant? Answer: $2,700.00."

From the judgment in accordance therewith in favor of plaintiff, defendant excepts thereto and appeals therefrom to the Supreme Court and assigns error.

*Hastings, Booe & Mitchell for plaintiff, appellee.*
*Deal, Hutchins & Minor, Ed. Pullen for defendant, appellant.*

WINBORNE, C. J. Taking the evidence offered by plaintiff, as shown in case on appeal, in the light most favorable to him and giv-ing to him the benefit of every reasonable intendment upon the evi-

dence and every inference to be drawn therefrom as is done in considering a motion for judgment as of nonsuit, this Court is of opinion and holds that the evidence is sufficient to support the verdict returned by the jury, and the judgment rendered thereon.

In this connection, testimony of the three witnesses, quoted hereinabove if believed, is sufficient to justify a finding of the jury that the dwelling house of plaintiff was damaged as the direct and proximate result of windstorm, as alleged in the complaint, and that plaintiff did not increase the hazard, as alleged in the answer. See *Wood v. Ins. Co.*, 245 N.C. 383, 96 S.E. 2d 28.

It may be there are discrepancies and contradictions in plaintiff's evidence, some of which are pointed out by defendant in brief filed in this Court, but they are "for the twelve and not for the Court." See *Barlow v. Bus Lines*, 229 N.C. 382, 49 S.E. 2d 793; *Brafford v. Cook*, 232 N.C. 699, 62 S.E. 2d 327; *Gales v. Smith*, 249 N.C. 263, 106 S.E. 2d 164, and cases cited.

Indeed the case is largely one for the jury, to whom it appears from the case on appeal it was presented in a charge free from prejudicial error. In the trial and judgment on the verdict there is

No Error.