### H. J. STOCKARD ET AL. v. WARREN AND WIFE.

(Filed 3 April, 1918.)

**1. Contracts—Writing—Letters—Statute of Frauds.**

The owner of farming lands made an offer by letter that if the addressee would take charge of his farm and stock, at the death of the owner and his wife he should have a certain portion thereof in fee simple; and wrote later reiterating the terms of the offer, evidencing the receipt of the letter of acceptance, agreeing upon a later time when the addressee should move there, which was accordingly done. *Held*, the contract is valid within the meaning of the statute of frauds.

**2. Contracts—Lands—Descriptions— Evidence — Identification — Deeds and Conveyances.**

A proposition, upon consideration by letter and acceptance, to give 200 acres of land on the home place of a larger tract of land, is not too vague as to description to admit of parol evidence of identification and evidence when theretofore the owner had caused the tract to be cut up in several tracts, leaving a well defined 200-acre tract attached to the home place.

**3. Contracts—Lands—Acceptance—Consideration — Trusts and Trustees — Courts—Equity—Decrees.**

Where the owner of lands, by letter, makes a proposition, upon lawful consideration, to give a certain part thereof after his own death and that of his wife, which has been accepted in writing and complied with, the court will decree, at the death of the owner and his wife, a trust in favor of the acceptor and enforce it.

APPEAL by defendants from *Connor, J.,* at September Term, 1917, of ALAMANCE.

*Long & Long and Manning & Kitchin for plaintiffs.*
*W. P. Bynum and Parker & Long for defendants.*

CLARK, C. J. This was a proceeding by the heirs at law of Y. B. Warren to sell the tract of land set out in the petition for partition, making R. E. Warren and wife defendants, who allege that he was sole owner because the intestate had entered into a contract in writing with him to move upon his land and take charge of the farming operations upon an agreement that Y. B. Warren would devise absolutely to the defendant R. E. Warren the tract of land described in the petition. Said Y. B. Warren died intestate after his wife and the defendant R. E. Warren averred that the plaintiffs held the land as trustees for himself, and asked that they be declared equitable owners only of said real estate and be required to convey said legal title to him. On this plea the cause was transferred to term for trial. The court held that the agreement could not be executed because the description of the property was too indefinite, and sustained the plaintiffs' motion to nonsuit the defendants.

The writings offered by defendants are two letters from Y. B. Warren to the defendant R. E. Warren as follows:

BURLINGTON, N. C.,

R. F. D. No. 3, Box No. 21,

February 12, 1906.

DEAR ED:—If you will come and take charge of my farm and stock of all kinds and run the farm, I will give you all the tobacco you can make and at mine and my wife's death all the stock and 200 acres of land on home place shall be yours to have and hold forever in fee-simple. Ed, I make this offer to you because I am worn-out and want my people to have my property at my death.        Your Uncle,

Y. B. WARREN.

(On opposite side of sheet:)   Confidential to you, Ed.

Y. B. WARREN.

The second letter was as follows:

BURLINGTON, N. C., R. F. D. No. 3, Box No. 21.

DEAR EDGAR:—Yours to hand and contents noted.

I made the proposition in good faith to you, intending to take you as one of my family and hand over to you at my death about $5,000 in property. Edgar, you spoke of a notion to get married. That will suit me, as I have five different residences good enough for anybody to live in. Edgar, I have made arrangements for this year now, but if you will come to me next fall I will do just what I said. Now go to work and hunt you up a good, domestic wife and come to my house next fall and go to business where your Uncle can start you in life. All is well.

Y. B. WARREN.

It was in proof that both these letters were received by defendant in spring of 1906 by mail and were in the handwriting of Y. B. Warren.

It was in evidence that the defendant R. E. Warren moved to Y. B. Warren's in the following fall of 1906, took charge of his farm and managed it till his death; looked after the rents of the other tenants and took the business in hand entirely. At first he lived in the house with Y. B. Warren, but after his marriage he moved into a house on the edge of the yard 20 or 30 steps from Y. B. Warren and is still living there.

The only question presented is the nonsuit entered by the judge on the ground that the description of the property was not sufficiently definite to make this a valid contract to devise the property. There was evidence that the tract of land on which the intestate lived originally contained several hundred acres, but that several years before Warren moved on the place the intestate had caused the tract to be cut up into several, leaving 200 acres with well defined bounds attached to the place where he lived, which was known as the intestate's home place, in the neighborhood and generally.

The offer to the defendant in the letter of 12 February, 1906, to give him at death of the intestate and his wife's death "all the stock and 200 acres of land on the home place to have and to hold forever in fee simple," in the light of the above testimony was sufficient to be submitted to the jury for the identification of the property.

"There can be no question that a contract upon a sufficient consideration to devise lands is valid and may be enforced in a court of equity, the decree being so drawn as to declare the parties to whom the land is devised, or, in the event of a failure to devise, the heirs at law to hold such lands in trust for the persons to whom the testator had contracted to devise them." *Price v. Price,* 133 N. C., 503. To same purport *East v. Dolohite,* 77 N. C., 566; *Earnhardt v. Clement,* 137 N. C., 94.

"It is settled by a line of authorities which are practically uniform, that while a court of chancery is without power to compel the execution of a will, and therefore the specific execution of an agreement to make a will can not be enforced, yet if the contract is sufficiently proved and appears to have been binding on the decedent, and the usual conditions relating to specific performance have been complied with, then equity will specifically enforce it by seizing the property which is the subject matter of the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by his will." *Naylor v. Shelton,* Am. Ann. Cases, 1914, A, 394.

The defendant R. E. Warren testified that he received both these letters, with the envelopes in which they are contained, by mail in the spring of 1906. The signature and handwriting of the intestate were proven. The contract is made up of the two letters, the latter showing

that the defendant had received from the intestate the first letter, that he had replied thereto and then the intestate wrote reiterating the contract and consenting to postpone the time for the defendant to move upon his place till the fall, at which time it is in proof that the defendant did move upon the place and took charge according to the terms of the letter.

"A valid contract within the Statute of Frauds may be of one or many pieces of paper, provided the several pieces are so connected physically or by internal reference that there can be no uncertainty as to their meaning and effect when taken together." *Mfg. Co. v. Hendricks,* 106 N. C., 492.

Upon the evidence, it was for the jury to decide whether the property was sufficiently identified, for the description upon the face of the contract is not so palpably defective as to be incurable by any evidence. *Farmer v. Batts,* 93 N. C., 390-391.

In *Boddie v. Bond,* 158 N. C., 205, it is said that a devise "I give my wife, Cornelia, the house where we now live, with all the outhouses and premises, embracing the peach and apple orchard;" is a sufficient description to pass the title and permit parol testimony to fit the description to the land intended.

In *Fulwood v. Fulwood,* 161 N. C., 601, where the devise of a tract of land describes it simply as the "homestead tract," the Court said: "The description of the land devised to the defendant as 'the homestead tract' presented the case of a latent ambiguity, as it was uncertain what land was intended to be included under that designation, after it appeared that the 200-acre tract and the first, second, and third tracts described in the petition were adjoining tracts, and that the lands were acquired under different descriptions and at different times. It was then permissible to introduce extrinsic evidence to fit the description, and for the purpose the declarations of the testator at the time of making the will, and at other times, and his manner of dealing with the land, as by listing for taxation as one tract, were competent evidence."

In *Johnson v. Mfg. Co.,* 165 N. C., 105, where the description was "50 acres adjoining P. R., bounded on White Oak Road and adjoining A. S. R. and P. S.," the Court said: "We think his Honor erred in excluding parol testimony to identify this tract of land. It was a latent and not a patent ambiguity. It may be that the defendant could have shown that *the boundaries had been actually run and marked."* In the present case there was evidence by the surveyor and others that when the rest of the tract was surveyed and cut off, the 200 acres around the homestead of the intestate was surveyed, the boundaries run and corners marked.

"Parol evidence of surrounding circumstances is competent in the interpretation of a deed or will to enable the court to ascertain the intention of the parties." *Caudle v. Caudle,* 159 N. C., 55.

It is open to the plaintiffs to put on testimony, if they can, to contradict any part of the evidence as to the identity of the land, but it was error to direct a nonsuit.

Reversed.