ELIZABETH COFFEY LADD, MARGARET COFFEY GRADDY, AND MARION COFFEY HENSLEY v. THE ESTATE OF MAY GORDON LATHAM KELLENBERGER, R. D. DOUGLAS, JR. AS CO-EXECUTOR OF THE ESTATE OF MAY GORDON LATHAM KELLENBERGER; NORTH CAROLINA BANK, AS CO-EXECUTOR OF THE ESTATE OF MAY GORDON LATHAM KELLENBERGER; MARY GARDNER NOVOTNEY; EILEEN TAYLOR LOVE; HELEN L. EUBANKS; RUTH L. SMITH; AGNES L. COX; BLANCHE L. SUTTON; MARTHA LOUISE L. WALKER; FRANK B. LATHAM; EDWARD L. LATHAM; LUCILLE L. REDFEARN; GABRIEL RUFFIN LATHAM; JOHN L. SNIPES; W. LUBY SNIPES, JR.; JAMES E. SNIPES; RUTH S. BROWN; MABEL S. TALTON; LELA S. WHITLEY; HAZEL S. HARDEE; MILDRED S. SORTINO; JOHN L. LATHAM, JR.; LOUISE L. NYGARD; MAY GORDON L. LUTHI; EDYTHE V. LATHAM; AND ALL UNKNOWN HEIRS OF MAY GORDON LATHAM KELLENBERGER

No. 572PA83

(Filed 1 October 1985)

**1. Adoption § 1— breach of contract to adopt—equitable adoption—Rule 12(b)(6) dismissal proper**

An action in the alternative for breach of a contract to adopt, adoption by estoppel, or equitable adoption was properly dismissed as failing to state a

claim upon which relief could be granted where the deceased's will, attached to and incorporated into the complaint, bequeathed forty percent of her residual estate to "various relatives, both on my father's and my mother's side of the family, who would inherit from me if I died intestate." The phrase "various relatives" plainly denotes relatives in varying degrees; the reference to "my father's and my mother's sides of the family" inevitably excludes children, adopted or otherwise, and refers to collateral kin; and the children would not have shared in the estate even if they had been adopted. G.S. 1A-1, Rule 12(b)(6).

2. **Wills § 2.2— agreement to adopt and make heirs at law—not a contract to make a will**

An agreement to adopt the plaintiffs and to make them heirs at law did not constitute a contract to make a will in plaintiffs' favor because it did not identify with any degree of particularity property to which the agreement referred; without more it is a mere agreement to treat plaintiffs as if they were natural children who were nevertheless disinheritable by will.

Justice BILLINGS took no part in the consideration or decision of this case.

ON plaintiffs' petition for discretionary review of a decision of the North Carolina Court of Appeals, 64 N.C. App. 471, 307 S.E. 2d 850 (1983), affirming the dismissal of plaintiffs' action by *Judge Helms*, presiding in GUILFORD County Superior Court.

*Crisp, Davis, Schwentker and Page by William T. Crisp and Cynthia M. Currin; Pree and Pree by Robert O'Shea for plaintiff appellants.*

*Douglas, Ravenel, Hardy, Crihfield and Bullock by Robert D. Douglas, III, and James M. Lung; Nichols, Caffrey, Hills, Evans and Murrelle by Edward L. Murrelle and R. Thompson Wright; Daughtry, Hinton, Woodard and Murphy, P.A., by W. Kenneth Hinton for defendant appellees.*

EXUM, Justice.

Plaintiffs were not provided for in the will of May Gordon Latham Kellenberger, deceased. They bring this action claiming the Court should either enforce what they allege to be a contract made by Mrs. Kellenberger to adopt them or declare them to have been equitably adopted. Then, as adopted children, they should be entitled to share in Mrs. Kellenberger's estate.

The principal question is whether the complaint states a claim for relief sufficient to withstand a motion to dismiss under

Rule 12(b)(6). The trial court concluded it does not and the Court of Appeals affirmed, holding that no cause of action for equitable adoption exists in North Carolina. We find no occasion to address the question of whether North Carolina recognizes the doctrine of equitable adoption, but we affirm on other grounds the result reached by the courts below. Although it is unclear from their brief whether appellants even contend that the complaint states a claim for breach of a contract to make a will, we conclude that it does not.

I.

In considering a complaint's sufficiency when attacked by a motion to dismiss under Rule 12(b)(6), a court must take as true the facts alleged. *Smith v. Ford Motor Co.*, 289 N.C. 71, 80, 221 S.E. 2d 282, 288 (1976). These allegations here are:

Elizabeth Coffey Ladd, Margaret Coffey Graddy, and Marion Coffey Hensley, appellants herein, are the daughters of H. Wilson Coffey and Letha May Coffey, a second cousin of May Gordon Latham Kellenberger. Appellants, who were born just before the Great Depression, lived with their parents in Greensboro. In 1933 appellants' father, in an effort to provide for his children's welfare, visited Mrs. Kellenberger, deceased herein, and her husband, John Kellenberger. The Kellenbergers were wealthy and childless. During this visit the Kellenbergers agreed to rear and educate the Coffey daughters, adopt them, and make them their heirs at law. In return, the Coffeys agreed to surrender all rights to their daughters.

Thereafter, the Kellenbergers took custody and control of appellants. Instead of keeping appellants in their home, however, the Kellenbergers placed them in the Barium Springs Home for Children. Throughout the appellants' childhoods, the Kellenbergers made all decisions concerning their maintenance and support. Although their natural parents, the Coffeys, were still alive, appellants remained beyond their contact and control. The Kellenbergers provided them with clothing, toys, gifts and music lessons.

In 1948, Mr. Coffey again visited the Kellenbergers, who repeated their agreement to adopt his daughters and also agreed to finance their higher educations if Coffey would continue to

avoid contact with and exert no control over them. The Kellenbergers paid all expenses for Elizabeth and Margaret to attend Greensboro College and for Marion to receive training in practical nursing. The Coffeys had no further contact with appellants.

Mrs. Kellenberger continued to present appellants with gifts throughout her life. Furthermore, she provided financial assistance for appellants' children to attend college. In numerous instances she held appellants out to the public as "her girls." Appellants continued to maintain close contact with the Kellenbergers through visits, telephone calls, and correspondence. The Kellenbergers never formally adopted appellants.

On 1 May 1978 Mrs. Kellenberger died testate, without natural children and predeceased by her husband. Appellants and their father survived her. In her will, which was attached to the complaint and incorporated therein by reference, she made numerous contributions and donations to various charities. The provision upon which all parties rely bequeaths 40 percent of her residuary estate to her "various relatives, both on my father's and my mother's sides of the family, who would inherit from me if I died intestate."

Deceased's last will and testament was filed for probate on 6 December 1978. The clerk issued letters testamentary to R. D. Douglas, Jr. and North Carolina National Bank as coexecutors. Most, but not all, of the proceeds from the estate have been distributed. Appellants filed this civil action on 30 April 1981 against the coexecutors and distributees who have received estate proceeds. Appellants pray that the court specifically enforce what they say was a contract to adopt them made by the Kellenbergers and their father or, in the alternative, decree their equitable adoption.

The trial court dismissed the case for lack of personal jurisdiction as to four defendants: May Gordon L. Luthi, Mary Gardner Novotney, Martha Louise Walker, and Blanche L. Sutton. It dismissed the case against all defendants for failure to state a claim upon which relief could be granted. The North Carolina Court of Appeals affirmed the dismissals for failure to state a claim for relief. That court reasoned that the doctrine of equitable adoption had not been recognized in North Carolina and was contrary to both the prevailing law and the public policy of this

state. *Ladd v. Estate of Kellenberger*, 64 N.C. App. 471, 473-74, 307 S.E. 2d 850, 853 (1983). We granted appellants' petition for discretionary review on 10 January 1984.

II.

[1] We initially consider appellants' claim that the Kellenbergers agreed to adopt them. Appellants couch their argument, in the alternative, as the breach of a contract to adopt, adoption by estoppel, or equitable adoption.

As the Court of Appeals correctly observed, North Carolina has not recognized the doctrine of equitable adoption. Appellants urge us to adopt this principle, as have a majority of other states which have considered the issue. Note, *Equitable Adoption: They Took Him into Their Home and Called Him Fred* 58 Va. L. Rev. 727 (1972) (recognizing that some twenty-five states have adopted this rule, while eight have rejected it).

After careful study of the complaint, we find that it contains facts which operate to bar the recovery sought by appellants under both alternative theories of equitable adoption and breach of contract to adopt. We therefore find it unnecessary to decide whether we shall recognize the equitable adoption doctrine in this state or whether the complaint sufficiently alleges breach of contract to adopt.

The result flows from the scope of our review of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss. "This rule . . . generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery." *Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E. 2d 161, 166 (1970) (quoting *American Dairy Queen Corp. v. Augustyn*, 278 F. Supp. 717, 721 (N.D. Ill. 1967) ). A complaint should not be dismissed under Rule 12(b)(6) ". . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." *Presnell v. Pell*, 298 N.C. 715, 719, 260 S.E. 2d 611, 613 (1979).

In this case the face of the complaint discloses an insurmountable bar to appellants' recovery on any adoption theory.

The deceased's will, attached to the complaint and incorporated therein by reference, fully disposes of her estate to collateral relatives, not including appellants.

Appellants rely on Item Five of the will which bequeaths 40 percent of deceased's residual estate to "various relatives, both on my father's and my mother's sides of the family, who would inherit from me if I died intestate." Appellants suggest that if a court were to decree their adoption under either theory advanced by them, then they would take the entire Item Five bequest. Deceased left no lineal descendants, since she died without natural children and was predeceased by her husband, her parents, and her grandparents. Appellants argue that as deceased's adopted children they would take this bequest under N.C. Gen. Stat. §§ 29-16(a) and 29-17(a) (surviving children take all of intestate's estate; adopted children treated like natural children for purposes of intestate succession).

We disagree. We conclude that Item Five of Mrs. Kellenberger's will would have been effective to disinherit appellants even if they had been her natural or adopted children. Therefore, it is not necessary to determine whether Mrs. Kellenberger breached a contract to adopt them or whether the Court should decree that the children were in equity adopted. Even if they had been adopted, they would not, under this will, share in Mrs. Kellenberger's estate.

When the language of a testator's will is unambiguous and leaves no occasion for judicial interpretation, effect must be given its clear and recognized legal meaning. *Rhoads v. Hughes,* 239 N.C. 534, 80 S.E. 2d 259 (1954) (*per curiam*). If the testator's intent is ascertainable from the will itself, extrinsic evidence is not admissible to overrule the will's expressed intent. *Wachovia Bank & Trust Co. v. Green,* 239 N.C. 612, 80 S.E. 2d 771 (1954). "[T]he intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Clark v. Connor,* 253 N.C. 515, 520, 117 S.E. 2d 465, 468 (1960).

We are satisfied that Mrs. Kellenberger intended by Item Five to make a bequest only to her *collateral* relatives who would take her property had she died intestate. Her use of the phrase

"various relatives, both on my father's and my mother's side of the family" plainly refers to collateral, not lineal relatives. While children are indeed relatives of their parents, it is unusual for parents to refer to their children, adopted or natural, as "relatives." The phrase "various relatives" plainly denotes relatives in varying degrees; and the reference to "my father's and my mother's sides of the family" inevitably excludes children, adopted or otherwise, and refers to collateral kin.

Item Five did not, contrary to appellants' contention, purport to be a bequest to *all* those who would take as in intestacy; it purported to be a bequest only to Mrs. Kellenberger's *collateral* kin who would take as in intestacy. Thus Item Five would operate to exclude appellants even if a court decreed them to be the adopted children of Mrs. Kellenberger.

The law in North Carolina does not prohibit parents from disinheriting children. The right to give or take property is not a natural or inalienable right, but one of positive law, created and controlled by the legislature. *Pullen v. Commissioners of Wake County*, 66 N.C. 361, 363-64 (1872). *Accord Peace v. Edwards*, 170 N.C. 64, 86 S.E. 807 (1915). Moreover the very freedom to make a will implies a concomitant freedom of every person "to disinherit by will persons who would otherwise inherit his property if the testator had died intestate." 1 N. Wiggins, Wills and Administration of Estates in North Carolina § 158 at 291 (2d ed. 1983). Only the legislature is empowered to limit this freedom.

The North Carolina General Assembly has elected to restrict this testamentary freedom only in respect to a testator's spouse. *See* N.C. Gen. Stat. § 30-1 (1984) (allowing a spouse to dissent from a will and take his or her intestate share of the testator's estate rather than the share provided for him or her under the will). Since the legislature has not restricted the power of a parent to disinherit her natural or adopted children, deceased's decision to exclude appellants from her testamentary bequests violates neither the law nor the public policy of North Carolina.

A Maryland case closely parallels the one before us. In *Besche v. Murphy*, 190 Md. 539, 59 A. 2d 499 (1948), plaintiff, an orphan, was taken in at age eight by the Herrmans, who promised to adopt her and raise her as their own. Plaintiff lived with the Herrmans, took their name, and was known and treated as their

daughter, despite the foster parents' failure to adopt her formally. In her will the foster mother, who died without a husband or issue surviving her, left a residuary bequest to "those persons who under the laws of the State of Maryland would take in case of intestacy." Plaintiff sought to have the agreement to adopt specifically enforced to provide her the same rights of inheritance as if she had been formally adopted.

The Court affirmed the dismissal of the complaint on demurrer. The Court rejected the principle of adoption by private contract, thus precluding specific enforcement of an agreement to adopt. The Court then recognized cases from other states which gave effect to oral contracts to adopt after the child had fully performed its obligations. These cases awarded the child its intestate share. Nevertheless, these cases also recognized that any natural or adopted child may be disinherited by will. In *Besche*, although the foster mother's will directed that her residual beneficiaries be determined by the intestacy statute, it did not create an intestacy; the beneficiaries took under her will. The Court held that only those beneficiaries answering a class description at testatrix' death were entitled to share in the class gift. Plaintiff sought to be declared testatrix' adopted daughter after testatrix' death; she was not and could not be made by post-mortem adoption a member of the class described in the will.

Appellants in the present case attempt to distinguish *Besche* by pointing out that in that case plaintiff received a general pecuniary bequest under another section of her foster mother's will. But under North Carolina law, a testator is not required to mention by name or make some provision for a child in order to disinherit that child even if the child is born or adopted after the will is made. It is enough even as to an after-born or after-adopted child that "it is apparent from the will itself that the testator intentionally did not make specific provision therein for the child." N.C. Gen. Stat. § 31-5.5(a). The language in Mrs. Kellenberger's residuary bequest indicates even more specifically than the will in *Besche* that appellants are excluded, by limiting the class of takers to various collateral relatives rather than to all who would inherit by intestacy. If we apply the rationale in *Besche* to the present case, appellants would be disinherited by Mrs. Kellenberger's will even if they were entitled to be declared, post-mortem, equitably or otherwise, her adopted children, and

even if Mrs. Kellenberger's bequest had been to all who would take in intestacy.

Appellants' complaint contains an insurmountable bar to relief inasmuch as it shows they were disinherited by deceased. Therefore, we affirm the result reached by Court of Appeals insofar as it affirms the trial court's dismissal of appellants' complaint for failure to state a claim for equitable adoption or breach of a contract to adopt.

### III.

[2] In their complaint, appellants allege that the Kellenbergers agreed "to adopt plaintiffs and to make them their heirs at law." This agreement alone, if made, does not constitute a contract to make a will in appellants' favor.

Both parties call our attention to *Chambers v. Byers*, 214 N.C. 373, 199 S.E. 398 (1938). In *Chambers*, a written agreement was entered into which provided, in pertinent part:

> 'And we the said John and Isabelle Tucker of the (2nd) second part do hereby covenant and agree to adopt the said Lucy Bowers (herein mentioned) as our own child, and that we will well clothe, feed and educate her, providing for all her temporal wants to the best of our ability. And we, the said John and Isabelle Tucker of the (2nd) second part do still further agree to make said Lucy Bowers (herein mentioned) our sole and only heir to what we, the said John and Isabelle Tucker of the (2nd) second part may die possessed of, and that any violation of the above on our part shall make this contract null and void.'

214 N.C. 373, 375, 199 S.E. 398, 400 (1938). The Tuckers died intestate and Lucy Bowers Knight claimed she was entitled to a certain tract of land included in the Tucker estate. On appeal from the trial court's dismissal of Lucy Bowers Knight's action, this Court reversed. Concluding that the contract was neither a will nor a contract to adopt, the Court held it was a specifically enforceable contract to make a will. This Court had said earlier:

> It is settled by a line of authorities which are practically uniform, that while a court of chancery is without power to compel the execution of a will, and therefore the specific ex-

ecution of an agreement to make a will cannot be enforced, yet if the contract is sufficiently proved and appears to have been binding on the decedent, and the usual conditions relating to specific performance have been complied with, then equity will specifically enforce it by seizing the property which is the subject matter of the agreement, and fastening a trust on it in favor of the person to whom the decedent agreed to give it by his will.

*Stockard v. Warren*, 175 N.C. 283, 285, 95 S.E. 579, 580 (1918) (quoting Annot., 1914A Am. Ann. Cases 394, 399); *see Naylor v. Shelton*, 102 Ark. 30, 143 S.W. 117 (1912). In *Naylor*, decedent contracted to devise a certain tract of land to his daughter in exchange for room, board and care, which they provided for him until his death. The Court enforced this agreement as to the tract specified in the agreement.

The facts alleged here are not sufficient to bring this case within the above principle or the holding of *Chambers*. The agreement in *Chambers* is more specific than that alleged in the instant case. In *Chambers*, John Tucker, the "adoptive" father, agreed to adopt the child and to make her his "sole and only heir *to what* [he and his wife] *may die possessed of*." (Emphasis supplied.) Appellants in the instant case allege an oral contract to the effect that the Kellenbergers agreed "to adopt plaintiffs and make them their heirs at law." Further, in *Chambers* plaintiff's foster parents died intestate, but in the instant case Mrs. Kellenberger left a will completely disposing of her property, with no bequest at all in favor of appellants.

An agreement otherwise enforceable that the child shall receive the parent's property at the parent's death is sufficient to establish a contract to devise or bequeath property to that child. *Best v. Gralapp*, 69 Neb. 811, 96 N.W. 641, *aff'd on rehearing*, 69 Neb. 815, 99 N.W. 837 (1903); *Kofka v. Rosicky*, 41 Neb. 328, 59 N.W. 788 (1894). A mere contract to adopt a child, however, is not a contract to devise or bequeath property to that child. *Finger v. Anken*, 154 Iowa 507, 131 N.W. 657 (1911). Indeed, a contract to adopt a child and make it promisor's heir, without a clear and specific indication of an agreement to devise or bequeath identifiable property, may mean no more than that the child is to be treated as a natural child of the promisor who may nevertheless

be disinherited at the parent's pleasure. The Idaho Court held that an oral contract to will property to another will be enforced in equity, where the contract is clear, definite and certain, supported by the evidence, not unjust to innocent third parties, and already has been performed by the promisee and the beneficiary. *Bedal v. Johnson*, 37 Idaho 359, 218 P. 641 (1923). A New York court held that an agreement to adopt a child, make him an heir and give him the interest of a son in whatever property the promisor owned at death was enforceable against the estate of the promisor, who died intestate without natural children. *Gates v. Gates*, 34 A.D. 608, 54 N.Y.S. 454 (1898). The contract may state that adoptive parents agree to make the child their heir, which may be enforced in equity, but that agreement alone does not create in the child such an interest in the foster parent's property as to preclude the parent from freely disposing of that property by will. *Pemberton v. Perrin*, 94 Neb. 718, 144 N.W. 164 (1913).

Here the agreement appellants allege, *i.e.*, that the Kellenbergers would adopt them and make them their heirs, fails as a contract to make a will. It does not identify with any degree of particularity property to which the agreement may refer. Without more, it means a mere agreement to treat appellants as if they were natural children, who are nevertheless disinheritable by will. The complaint, therefore, states no claim for breach of a contract to make a will favorable to appellants.

IV.

In addition to granting their motions to dismiss under Rule 12(b)(6), the trial court also dismissed appellants' action as to defendants May Gordon L. Luthi, Mary Gardner Novotney, Martha Louise Walker, and Blanche L. Sutton for a lack of personal jurisdiction. N.C. R. Civ. P. 12(b)(2). Inasmuch as it affirmed the trial court's ruling regarding other motions to dismiss, the Court of Appeals had no occasion to review these dismissals by the trial court for an absence of personal jurisdiction. As we also affirm the dismissals under Rule 12(b)(6), we need not reach the question of personal jurisdiction as to these four defendants.

V.

In conclusion, an insurmountable bar to appellants' claim for relief on the grounds of either equitable adoption or breach of a

contract to adopt appears on the face of their complaint. We also find that the complaint does not allege facts which are sufficient to state a claim for breach of a contract to make a will. Thus, we affirm the dismissal by the Court of Appeals of appellants' action for failure to state a claim upon which relief can be granted.

Affirmed.

Justice BILLINGS took no part in the consideration or decision of this case.